BLANK ROME LLP
*Attorneys for Plaintiff*
William R. Bennett, III
Lauren B. Wilgus
Rick Antonoff
1271 Avenue of the Americas
New York, NY 10020
(212) 885-5000
Wbennett@blankrome.com
Lwilgus@blankrome.com
Rantonoff@blankrome.com

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
:
PREBLE – RISH HAITI, S.A.                                   :
:
Petitioner,                                 :
:  C.A. No.
- against -                                 :  IN ADMIRALTY
:
REPUBLIC OF HAITI, BUREAU DE MONÉTISATION   :
DE PROGRAMMES D'AIDE AU DÉVELOPPEMENT,      :
:
Respondents.                                :
------------------------------------------------------------x

### PETITION TO RECOGNIZE, CONFIRM AND ENFORCE INTERNATIONAL ARBITRATION PANEL'S PARTIAL FINAL AWARD AND FOR ENTRY OF JUDGMENT

Petitioner Preble-Rish Haiti, S.A. ("PRH"), by and through its attorneys Blank Rome LLP, respectfully petitions pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention") and Chapter Two of the Federal Arbitration Act, 9 U.S.C. §§ 201 et seq. (the "FAA") for an order recognizing, confirming and enforcing the international arbitration panel's partial final award entered in its favor on August 6, 2021 (the "Partial Final Award"), against Respondents Republic of Haiti and Bureau De Monétisation De

Programmes D'aide Au Développement (collectively "BMPAD") and for the entry of judgment thereon.

## I.  PETITION

1. Under Section 6 of the FAA, an application to confirm an arbitral award "shall be made and heard in the manner provided by law for the making and hearing of motions, except as otherwise herein expressly provided." 9 U.S.C. § 6; *Wells Fargo Advisors, LLC v. Soliman*, 2015 WL 4619821, at *2 (S.D.N.Y. Aug. 4, 2015). "Under the FAA, the petition itself should be treated as a motion to confirm the award." *In re Certain "Default" Motions Brought o/b/o Trs. Of Empire State Carpenters Annuity, Apprenticeship, Labor-Mgmt. Coop., Pension & Welfare Funds*, 2015 WL 968125, at *5 (E.D.N.Y. Feb. 28, 2015) (citing 9 U.S.C. § 6); *see also id.* ("[A] petition represents the procedural device that should be used to resolve these cases.") (footnote omitted). This Court must accordingly treat this petition as a motion and should docket this petition for submission and ruling as soon as possible pursuant to the local rules.

## II.  THE PARTIES

2. PRH is a company organized under the laws of Haiti with a principal place of business located at Hexagon Building, 5th Fl, Angle Rues Clerveaux and Darguin, Pétion Ville, Haiti. PRH provides infrastructure-project management and material supply and, as it relates to the claims against BMPAD, also acted as a marine transportation fuel supplier and importer of record.

3. BMPAD are foreign entities organized under the laws of Haiti, with a principal place of business located at No.12 Boulevard Harry Truman, Port-au-Prince, Haiti.

### III. JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to federal-question jurisdiction, 28 U.S.C. § 1331, under Chapter 2 of the FAA implementing the New York Convention, 9 U.S.C. §§ 201 *et seq*. In particular, 9 U.S.C. § 203 provides that an action or proceeding "falling under the [New York] Convention shall be deemed to arise under the laws and treaties of the United States [and] [t]he district courts of the United States . . . shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy." See also *Telenor Mobile Commc'ns AS v. Storm LLC*, 584 F.3d 396, 404 (2d Cir. 2009); *Indus. Risk Insurers v. M.A.N. Gutehoffnungshutte Gmbh*, 141 F.3d 1434, 1441 (11th Cir. 1998).

5. This Court possesses *in personam* jurisdiction over Respondent BMPAD as a result of BMPAD's contractual agreement to arbitrate disputes under the parties' agreement in New York. Moreover, in other briefing before this Court, BMPAD has expressly represented that it is subject to service of process in this district via service at the Haitian consulate. See Dkt. 23 at p. 13. While PRH does not concede the correctness of that statement for the purposes of determining its presence in the district for Rule B purposes, PRH submits that BMPAD's representation to the Court effectively estops it from being able to challenge personal jurisdiction in this arbitration-enforcement action.

6. Because the arbitration is seated in New York pursuant to the parties' arbitration agreement, venue in this action properly lies in this District pursuant to 28 U.S.C. § 1391(b)(2) and 9 U.S.C. § 204 ("a[n] action or proceeding over which the district courts have jurisdiction pursuant to section 203 of this title may be brought in any such court … in such court for the district and division which embraces the place designated in the agreement as the place of arbitration").

3

## IV. FACTUAL AND PROCEDURAL BACKGROUND

7. This dispute arises under three contracts entered into on May 13, 2020, by and between PRH and the BMPAD. *See* Ex. 1, Leconte Aff. at ¶ 2.[1]

### A. The Fuel Oil Contracts

8. PRH agreed to source, ship and deliver diesel fuel, jet fuel and gasoline to BMPAD under the terms and conditions of the three contracts. All three fuel oil contracts were drafted by BMPAD. And, all three contracts provided that "the deliveries of which will be spread over a period of six months, remains in force for a period of one year from the date of signature hereof." *See* Exs. A-C to the Leconte Aff.; *see also* Ex. 1 at ¶¶ 3 & 4.

9. Article 12 of each of the three contracts provided that "[t]he buyer [BMPAD], at his expense, will provide the seller [PRH] with an international bank letter of credit (ESP 98) of irrevocable support issued by the Bank of the Republic of Haiti and confirmed by an international bank. The confirming bank must have a first quality credit rating acceptable to the seller."

10. BMPAD failed to provide the required letter of credit and PRH agreed that it would not require the letter of credit, provided BMPAD fully prepaid each shipment pursuant to a provisional invoice delivered monthly by PRH prior to shipment. BMPAD agreed.

11. Accordingly, the three contracts were amended on May 19, 2020 by an agreement entitled "Amendment No. 1 To The Three Contracts, Each Dated 13 May 2020, Concerning The Supply of Diesel, Mogas 87 And Jet 54 To The Monetization Office of Development Assistance Programs (THE BMPAD) of The Republic of Haiti." *See* Ex. D to the Leconte Aff.; *see also* Ex. 1 at ¶ 5.

---

[1] All references to the "Leconte Aff." and Exhibits to the Leconte Aff. have been previously filed in the related action bearing docket number 1:21-cv-04960-PKC. The Leconte Affirmation is Ex. 1 and can be found at ECF 14-1, pp. 1-12. The Exhibits to the Leconte Aff. are found at ECF 14-1, pp.13-88 through 14-3.

12. Each of the three BMPAD-drafted contracts included the identical arbitration provision. *See* Ex. 1 at ¶ 6.

13. Having the ability to arbitrate disputes outside of Haiti was an essential inducement to PRH entering into the three contracts with BMPAD because PRH was sourcing and shipping the diesel, jet fuel and gasoline from outside of Haiti. And, it made commercial sense not to have disputes decided in Haiti where the government completely controls the courts. Rather, it was critically important that PRH have a neutral and sophisticated international-trade forum, such as New York, to hear all disputes involving the contracts. PRH would not have agreed to the contracts without the arbitration clause. *See* Ex. 1 at ¶ 7.

14. The fuel contracts provided that PRH would make 6 monthly marine shipments of diesel, jet fuel and gasoline. *See* Ex. 1 at ¶ 8. Under the contracts, BMPAD would provide PRH with the monthly quantities of diesel, jet and gasoline they required, which was referred to as an "Order." The parties would then agree to a schedule of marine shipments for the month. Thereafter, PRH would issue a provisional invoice to BMPAD for the amount of the prepayment required for the scheduled monthly shipments. Quantities would be adjusted at the end of each monthly Order period with the actual quantities delivered. *See* Ex. 1 at ¶ 9.

**B.** **Orders, Deliveries, Invoices, & Payments**

15. On or about May 19, 2020, BMPAD provided PRH with Order 001. *See* Ex. 1 at ¶ 10.

16. On May 19, 2020, PRH issued its Order 001 Provisional Invoice for the sum of $37,625,000. *See* Ex. E to the Leconte Aff.; *see also* Ex. 1 at ¶ 11.

17. On May 22, 2020 BMPAD paid on account to PRH the sum of $37,625,000 for Order 001. *See* Ex. F to the Leconte Aff.; *see also* Ex. 1 at ¶ 12.

18. On or about June 22, 2020, BMPAD provided PRH with Order 002. *See* Ex. 1 at ¶ 13.

19. On June 22, 2020, PRH issued its Order 002 Provisional Invoice for the sum of $48 million. *See* Ex. G to the Leconte Aff.; *see also* Ex. 1 at ¶ 14.

20. On June 24, 2020, BMPAD made a payment of $48 million. *See* Ex. H to the Leconte Aff.; *see also* Ex. 1 at¶ 15.

21. On or about July 31, 2020, BMPAD provided PRH with Order 003. *See* Ex. 1 at ¶ 16.

22. On July 31, 2020, PRH issued Order 003 Provisional Invoice for the sum of $50,391,937.20. *See* Ex. I to the Leconte Aff.; *see also* Ex. 1 at ¶ 17.

23. On August 5, 2020, PRH issued Order 001 Final Invoice for the sum of $29,715,745.21. *See* Ex. J to the Leconte Aff.; *see also* Ex. 1 at ¶ 18.

24. BMPAD did not object to PRH's Order 001 Final Invoice. See Ex. 1 at ¶ 19.

25. In addition, on August 5, 2020, PRH issued three invoices for demurrage incurred on the MT OSPREY, MT ALPINE LIGHT, and MT CITRON. The demurrage for all three vessels totaled $187,466.15. *See* Ex. K to the Leconte Aff.; *see also* Ex. 1 at ¶ 20.

26. BMPAD did not object to the demurrage invoices. *See* Ex. 1 at ¶ 21.

27. On August 7, 2020 BMPAD made a payment of $21 million. *See* Ex. L to the Leconte Aff.; *see also* Ex. 1 at ¶ 22.

28. On August 7, 2020 BMPAD made a payment of $15 million. *See* Ex. M to the Leconte Aff.; *see also* Ex. 1 at¶ 23.

29. On August 17, 2020 PRH issued Order 002 Final Invoice in the sum of $40,790,686.16. *See* Ex. N to the Leconte Aff.; *see also* Ex. 1 at ¶ 24.

30. BMPAD did not object to PRH's Order 002 Final Invoice. *See* Ex. 1 at ¶ 25.

31. On August 17, 2020, PRH also issued four invoices for demurrage incurred on the MT STENA IMPRESSION, MT UNIQUE GUARDIAN, MT SILVER EBURNA and MT SUNNY BAY totaling $195,829.82. *See* Ex. O to the Leconte Aff.; *see also* Ex. 1 at ¶ 26.

32. BMPAD did not object to the demurrage invoices. *See* Ex. 1 at ¶ 27.

33. On or about August 28, 2020, BMPAD provided PRH with Order 004. *See* Ex. 1 at ¶ 28.

34. On August 28, 2020, PRH issued Order 004 Provisional Invoice for the sum of $46,734,889.74. *See* Ex. P to the Leconte Aff.; *see also* Ex. 1 at ¶ 29.

35. On September 11, 2020, BMPAD made a payment of $25 million. *See* Ex. Q to the Leconte Aff.; *see also* Ex. 1 at ¶ 30.

36. On September 23, 2020, PRH issued Order 003 Final Invoice for the sum of $45,669,623.05. *See* Ex. R to the Leconte Aff.; *see also* Ex. 1 at ¶ 31.

37. BMPAD did not object to PRH's Order 003 Final Invoice. *See* Ex. 1 at ¶ 32.

38. On September 23, 2020, PRH issued four invoices for demurrage incurred on the MT ELKA ELEFSIS, MT STENA IMPRESSION, UACC RIYADH and MT THAMES and one invoice for deviation in the MT STENA IMPRESSION totaling $271,006.89. *See* Ex. S to the Leconte Aff.; *see also* Ex. 1 at ¶ 33.

39. BMPAD did not object to the demurrage or deviation charges. *See* Ex. 1 at ¶ 34.

40. On October 1, 2020, PRH issued Order 004 Final Invoice for the sum of $44,071,612.74. *See* Ex. T to the Leconte Aff.

41. BMPAD did not object to this invoice. *See* Ex. 1 at ¶ 35.

42. On or about October 1, 2020, BMPAD provided PRH with Order 005. *See* Ex. 1 at ¶ 36.

43. On October 1, 2020, PRH issued Order 005 Provisional Invoice for the sum of $48,721,905.54. *See* Ex. U to the Leconte Aff.; *see also* Ex. 1 at ¶ 37.

44. On October 2, 2020, BMPAD made a partial payment of $24,999,980 of which $21,734,909.74 was applied to Order 004 and $3,265,070.26 was applied to Order 005. BMPAD never paid the remainder of the Order 005 Provisional Invoice. *See* Exs. V & W to the Leconte Aff.; *see also* Ex. 1 at ¶¶ 38 & 39.

45. PRH delivered diesel, jet fuel and gasoline to BMPAD without incident for Orders 001 through 004 and part of Order 005. Throughout this period BMPAD paid PRH's invoices without objection. See Ex. 1 at ¶ 40.

C. **The Default – Order 005**

46. On September 28, 2020, PRH sent an email to BMPAD reminding them to issue the purchase order for jet fuel Order 005 due for delivery by ship in October. BMPAD confirmed in writing that 49,000 barrels of jet fuel were expected. *See* Ex. X to the Leconte Aff.; *see also* Ex. 1 at ¶ 41.

47. On September 29, 2020, PRH received BMPAD's purchase order specifying the following product quantities for October:

- 49,000 barrels of jet fuel / 12-14 Oct
- 155,500 barrels of gasoline / 10-12 Oct
- 250,000 barrels of diesel / 14-16 Oct
- 155,500 barrels of gasoline / 22-24 Oct
- 250,000 barrels of diesel / 28-30 Oct

*See* Ex. Y to the Leconte Aff.; *see also* Ex. 1 at ¶ 42.

48. On October 1, 2020, PRH issued its provisional invoice for Order 005. *See* Ex. Z to the Leconte Aff.; *see also* Ex. 1 at ¶ 43.

49. On October 2, 2020 the BMPAD sent a wire transfer in the amount of $24,999,980. The wired funds were applied to the balance owed on Order 004 ($21,734,909.74), while the remainder was considered as a partial payment on Order 005 ($3,265,070.26). *See* Ex. 1 at ¶ 44.

50. On October 4, 2020, PRH sent an email to BMPAD to assure them that all arrangements had been made to guarantee deliveries of diesel, jet fuel and gasoline as per agreed schedule. *See* Ex. AA to the Leconte Aff.; *see also* Ex. 1 at ¶ 45.

51. On October 5, 2020, BMPAD submitted a revised Order 005 modifying the delivery windows, with following quantity breakdown and timeline:

- 49,000 barrels of jet A1 / 12-14 Oct
- 155,500 barrels of gasoline / 15-17 Oct
- 250,000 barrels of diesel / 19-21 Oct
- 155,500 barrels of gasoline / 30 Oct-1 Nov 2020
- 250,000 barrels of diesel / 2-4 Nov 2020

*See* Ex. BB to the Leconte Aff.; *see also* Ex. 1 at ¶ 46.

52. PRH provided BMPAD with a revised provisional invoice for Order 005 and extended the deadline until October 7, 2020 for payment. PRH reminded BMPAD that although PRH had allowed two vessels to deliver fuel oil prior to receiving payment under Order 004, delivery without payment would no longer be acceptable. *See* Ex. CC to the Leconte Aff.; *see also* Ex. 1 at ¶ 47.

53. On October 6, 2020, PRH reminded BMPAD that payment of prior invoices was due. That same day a waiver had also been requested for the displacement of MT AQUILA L, which was being loaded with gasoline.

9

54. On October 7, 2020, BMPAD granted a waiver for 42,000 MT max for MT AQUILA L. *See* Ex. DD at Leconte Aff.; *see also* Ex. 1 at ¶ 48.

55. Also, on October 7, 2020, PRH provided BMPAD with a revised delivery schedule to accommodate BMPAD, resulting in PRH incurring certain financial costs. The schedule was as follows:

- 49,000 barrels of jet A1 / 12-14 Oct
- 155,500 barrels of gasoline / 12-13 Oct
- 100,000 barrels of diesel / 14 Oct
- 150,000 barrels of diesel / 20-22 Oct
- 155,500 barrels of gasoline / End of Oct
- 150,000 barrels of diesel / First days of Nov

*See* Ex. EE to the Leconte Aff.; *see also* Ex. 1 at ¶ 49.

56. On October 12, 2020, PRH sent various shipping documents to BMPAD for the MT ENDEAVOUR II and MT AQUILA L, which were heading to Haiti with jet fuel, diesel and gasoline. *See* Ex. FF to the Leconte Aff.

57. Both vessels were due to arrive on October 14, 2020. *See* Ex. 1 at ¶ 50.

58. On October 12, 2020, PRH also sent an email to BMPAD with the Q88 vessel questionnaire seeking the approval for the MT MINERVA JULIE, a vessel proposed for future shipment of diesel.

59. Approval for the MT MINERVA JULIE was received from the BMPAD shortly thereafter. *See* Ex. GG to the Leconte Aff.; *see also* Ex. 1 at ¶ 51.

60. On October 13, 2020, the Captain of the MT ENDEAVOUR II tendered Notice of Readiness at 19:30. *See* Ex. HH to the Leconte Aff.; *see also* Ex. 1 at ¶ 52.

61. On October 14, 2020, the Captain of the MT AQUILA L tendered Notice of Readiness at 0040. *See* Ex. II to the Leconte Aff.; *see also* Ex. 1 at ¶ 53.

62. BMPAD acknowledged receipt of the shipping documents for both the MT ENDEAVOUR II and MT AQUILA L. *See* Ex. JJ to the Leconte Aff.; *see also* Ex. 1 at ¶ 54.

63. On October 14, 2020, at approximately 13:42, the MT ENDEAVOUR II started discharging cargo, i.e., 95,002.37 barrels of diesel fuel and 49,136.54 barrels of jet fuel. *See* Ex. KK to the Leconte Aff.; *see also* Ex. 1 at ¶ 55.

64. On October 15, 2020 PRH wrote to BMPAD requesting payment for the provisional invoice for Order 005 and reminded BMPAD that demurrage of $20,000 per day was being incurred on the MT AQUILA L, in addition to interest as per clause 11.4.1. of the contracts. *See* Ex. LL to the Leconte Aff.; *see also* Ex. 1 at ¶ 56.

65. On October 16, 2020, PRH and BMPAD agreed that the second shipment of diesel fuel for Order 005 would be increased by 40,000 barrels provided delivery was made on or about October 25, 2020. It was also agreed that the last shipment of diesel fuel under the contract would be on November 10, 2020. PRH also expressed its concern over BMPAD's long delays in making payment. *See* Ex. MM to the Leconte Aff.; *see also* Ex. 1 at ¶ 57.

66. On October 21, 2020, PRH again wrote to BMPAD requesting immediate payment of the remainder of the provisional invoice for Order 005 and confirmed future shipment arrival dates of October 25, October 31 and November 10. *See* Ex. NN to the Leconte Aff.; *see also* Ex. 1 at ¶ 58.

67. On October 22, 2020, despite not being paid by BMPAD for the fuel oil, PRH ordered the MT AQUILA L into port.

68. PRH's willingness to allow the AQUILA L to enter the port and discharge was conditionally granted following a phone conversation held between PRH's President and high-ranking members of BMPAD who promised to authorize immediate payment of PRH's invoice.

Although no payment had been received by nightfall, the AQUILA L began discharging its cargo of gasoline at 21:12. As per Intertek's report, the AQUILA L had on board 164,178.43 barrels of gasoline. *See* Ex. OO to the Leconte Aff.; *see also* Ex. 1 at ¶ 59.

69. On October 22, 2020, BMPAD approved the waiver requested by PRH for the displacement of the MT SM OSPREY. *See* Ex. PP to the Leconte Aff.; *see also* Ex. 1 at ¶ 60.

70. On October 23, 2020, PRH learned BMPAD was refusing to pay PRH the amount due and owing.

71. PRH instructed the MT AQUILA L to stop discharging at 06:16 that morning. 49,991.95 barrels had been delivered by that time. *See* Ex. 1 at ¶ 61.

72. On or about October 25, 2020, PRH learned that BMPAD obtained an *ex parte* court order granting BMPAD a "conservatory lien" over the AQUILA L and a right to discharge the cargo of gasoline.

73. Pursuant to the court's order, the MT AQUILA L resumed discharging at 21:18 on October 28, 2020. *See* Ex. 1 at ¶ 62.

74. PRH advised BMPAD that the MT SM OSPREY with 189,767 barrels of diesel fuel was scheduled to arrive in Haiti the next evening but would not enter Port-au-Prince until the situation with MT AQUILA L was resolved. A Certificate of Quality for the product onboard MT SM OSPREY was emailed from PRH to BMPAD, as were various shipping documents for the MT SM OSPREY, along with a reminder that the payment for Order 005 was overdue. The MT SM OSPREY never discharged in Haiti, resulting in additional damages being suffered by PRH. *See* Ex. QQ to the Leconte Aff.; *see also* Ex. 1 at ¶ 63.

75. BMPAD breached all three fuel contracts by (1) wrongfully seizing the MT AQUILA L and her shipment of fuel oil, for which BMPAD did not pay; (2) refusing to take

delivery of the remaining shipments, which PRH already committed to deliver under the three fuel contracts; and (3) defaulting on payments due to PRH. *See* Ex. 1 at ¶ 64.

76. On October 28, 2020, PRH issued a partial final invoice for Order 005 in the amount of $26,486,860.20 relating to shipments provided by the AQUILA L, ENDEAVOUR II and SM OSPREY. *See* Ex. RR to the Leconte Aff.; *see also* Ex. 1 at ¶ 65.

77. On November 6, 2020, PRH issued three invoices for demurrage for MT SCF IRTYSH, MT CELSIUS ROSKILDE, and MT APOSTOLOS and deviation costs for the MT APOSTOLOS in the sum of $674,618.81. *See* Ex. SS to the Leconte Aff.; *see also* Ex. 1 at ¶ 66.

78. On December 9, 2020, PRH issued two invoices for the demurrage for the MT AQUILA L and MT ENDEAVOUR II totaling $398,500.00. *See* Ex. TT to the Leconte Aff.; *see also* Ex. 1 at ¶ 67.

79. On March 3, 2021, PRH issued five invoices for shifting, deviation, demurrage, freight, insurance and port costs for the MT ALPINE LIGHT, MT CITRON, MT SM OSPREY, MT MINERVA JULIE totaling $1,955,982.68. *See* Ex. UU to the Leconte Aff.; *see also* Ex. 1 at ¶ 68.

### D. Damages

80. PRH maintains that BMPAD owes PRH in excess of **$27,290,086.91** as a result of BMPAD's breach of the fuel contracts, and damages continue to accrue. See Ex. 1 at ¶ 74. PRH is entitled to costs and attorney's fees as well.

### E. The New York Rule B Action

81. On June 6, 2021, PRH commenced this action against BMPAD seeking, amongst other things, a Rule B maritime attachment in aid of arbitration.1F[2] This Court issued a writ of

---

[2] That related action bears docket number 21-cv-4960.

maritime attachment and garnishment, and ultimately, a total of $29,290,086.91 in funds held by Citibank belonging to BMPAD was attached.

82. BMPAD has moved to vacate the attachment [see Dkt. 23], principally on the grounds that BMPAD's property in New York is immune to pre-judgment attachment under the Foreign Sovereign Immunity Act ("FSIA"). BMPAD's motion to vacate has been fully briefed and remains pending as of the date of this filing.

### F. The New York Arbitration[3]

83. On November 20, 2020, counsel for PRH transmitted to BMPAD a Notice Demanding Arbitration under the three fuel oil contracts. The arbitration notice identified Robert G. Shaw as PRH's appointed arbitrator, called upon BMPAD to appoint its own arbitrator, and indicated that if BMPAD failed to do so within the time provided under the terms of the BMPAD drafted arbitrations clauses, that PRH would select an arbitrator on BMPAD's behalf, and that both arbitrators would then appoint the third arbitrator. BMPAD failed to appoint an arbitrator, such that PRH appointed LeRoy Lambert as the second appointed arbitrator. Mr. Shaw and Mr. Lambert then appointed Louis Epstein as the third arbitrator.

84. On March 24, 2021, PRH submitted to the Panel its Initial Claim Statement and Request for an Interim Partial Award of Security in the Sum of $30,000,000. By email on March 27, 2021, BMPAD submitted a two-page Response to PRH's Initial Claim Statement and Request for an Interim Award. BMPAD stated that it did not recognize the New York Arbitration Panel's jurisdiction and had accordingly filed in New York state court its petition for a stay and request for a temporary restraining order and preliminary injunction. However, BMPAD did not

---

[3] The narrative for this summary of the arbitration proceeding is largely drawn from the facts outlined in the Partial Final Award attached as Exhibit A to the Bennett Declaration.

(and to date, still has not) actually obtained a TRO or preliminary injunction prohibiting further arbitration proceedings. Accordingly, on April 5, 2021, the Panel issued a ruling that in the absence of a TRO halting proceedings, the arbitration would go forward and the Panel would consider and determine PRH's request for security. BMPAD was directed to fully and substantively respond to PRH's Initial Claim Statement and Request for Security on or before April 23, 2021.

85. In accordance with the Panel's April 5, 2021, order, counsel for BMPAD submitted on April 23, 2021, the Respondent's Initial Statement of Defense, Counterclaims, Reservation of Rights, and Response to Request for Security, as well as various supporting affidavits and exhibits. On April 30, 2021, counsel for PRH submitted its reply to the BMPAD Defense. An oral hearing before the Panel on the issues raised was set for June 21-23, 2021.

86. In an email to the Panel on June 2, 2021, counsel for BMPAD, after repeating its objection to the jurisdiction of the Panel, indicated that it "will not be attending any 'hearings' you have scheduled." PRH responded to BMPAD's arguments, and on June 4, 2021, the Panel indicated that the hearing would go forward as scheduled. However, on June 9, 2021, BMPAD advised that their principal witness had contracted COVID-19 and would therefore be unable to attend the hearing. On June 17, 2021, the Panel advised that it would adjourn the June 21-23 hearing. The hearing on PRH's application for security was later reset for July 28-29.

87. On July 16, 2021, BMPAD requested a further 60-day adjournment of the July 28-29 hearing. PRH responded with its strong opposition to BMPAD's request for further delay. On July 21, 2021, the Panel denied BMPAD's request for an adjournment. On July 23, 2021, BMPAD submitted to the Panel a letter dated July 22 stating that, for various reasons, BMPAD "cannot and will not attend the hearing on PRH's request for an interim award of security." On July 25, 2021,

the Panel responded to BMPAD's July 22 letter, stating again that it would not agree to any further adjournment of the hearing and repeating the reasons set forth in its prior rulings. In its denial, the Panel urged BMPAD "to take advantage of that opportunity [to cross-examine PRH's witnesses, to present BMPAD's witnesses in opposition to the application and to present oral argument] and to participate in the hearing while fully reserving its position on the issues mentioned above. By email on July 27, 2021, counsel for BMPAD again wrote to the Panel repeating its objections to the Panel's decision to proceed with the hearing. That same day, the Panel responded to advise that they were standing on their prior determination that the hearing would proceed.

88. The hearing on PRH's application for an interim award of security commenced on July 28, 2021, at 10:00 am. Counsel for BMPAD was given notice of the hearing and was sent a link to the Zoom session but chose not to attend or participate. PRH presented evidence to the Panel, and the hearing was adjourned at 4:06 PM.

89. On August 6, the Panel issued its 31-page Partial Final Award.

### G. The Partial Final Award

90. In its Partial Final Award, the Panel summarized the origins of the proceeding, the various exchanges made by the parties to the Panel, as well as the Panel's responses to same, explained the Panel's reasoning in proceeding with the hearing on PRH's application for security, reviewed the facts that support PRH's claim of damages against BMPAD, and analyzed whether PRH had made a sufficient showing to support the award of interim security. Ultimately, the Panel determined that PRH had shown that pre-award security should be required, although not for the full amount that PRH had initially sought.

91. The operative portion of the Partial Final Award is set forth below:

> PRH's motion for partial pre-award security is hereby granted in part and denied in part. BMPAD is ordered to make a deposit in the amount of $23,043,429.79 in an escrow account to be established by the parties and held by a first-class New York bank which shall act as escrow agent and must irrevocably agree to abide by the orders of the Panel or the United States District Court for the Southern District of New York concerning payment of the funds so held. The Panel shall designate an independent escrow agent in the absence of agreement between PRH and BMPAD. The escrow deposit shall serve solely as pre-award security for PRH's claims in this arbitration, subject to the further orders of the Panel or the United States District Court for the Southern District of New York or the courts of the state of New York.
>
> The parties shall report to the Panel within thirty (30) days of the date of this award concerning the appointment of an independent escrow agent to hold the security hereby awarded and the deposit of the funds. All fees and expenses of the escrow agent shall be shared 50/50 by PRH and BMPAD pending the issuance of the Panel's final award, which may apportion those fees differently.
>
> This Partial Final Award may be confirmed by the United States District Court for the Southern District of New York or any other court which may have jurisdiction.
>
> The Panel reserves decision on allocation of attorney's fees and costs as well as its fees in connection with the present application and proceedings to date.[4]

92. As of the date of this petition, BMPAD has not yet posted the required security.

## V. RELIEF

WHEREFORE, Petitioner moves this Court for an Order:

A. Recognizing, confirming and enforcing the Partial Final Award rendered against BMPAD pursuant to the New York Convention and 9 U.S.C. § 201 *et seq.*;

B. Directing that judgment be entered thereon in the amount of **$23,043,429.79**, plus post-judgment interest;

C. Ordering Garnishee Citibank to make a deposit in the amount of **$23,043,429.79** from the monies previously attached in an escrow account to be established by the parties and held by a first-class New York bank which

---

[4] See Ex. A-1 at p. 31.

shall act as escrow agent and must irrevocably agree to abide by the orders of the New York Arbitration Panel concerning payment of the funds so held;

D. Ordering Garnishee Citibank retain the remaining balance of **$6,246,657.12** as security for a Final Arbitration Award;

E. Retaining jurisdiction to enforce satisfaction of the judgment as may be necessary; and

F. For all such other and further relief as is just and proper.

Dated: August 10, 2021                                            **BLANK ROME LLP**

*/s/ William R. Bennett, III*
William R. Bennett, III
Lauren B. Wilgus
Rick Antonoff
1271 Avenue of the Americas
New York, NY 10020
(212) 885-5000
(917) 332-3068
wbennett@blankrome.com
lwilgus@blankrome.com
rantonoff@blankrome.com

*Counsel for Plaintiff Preble-Rish Haiti, S.A.*