**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

PREBLE-RISH HAITI SA,

                      Petitioner,

                 -against-

REPUBLIC OF HAITI, BUREAU DE
MONÉTISATION DE PROGRAMMES
D'AIDE AU DÉVELOPPEMENT,

                      Respondent.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

Civil Action: 21-cv-6704 (PKC)
IN ADMIRALTY

 

**MEMORANDUM OF LAW IN SUPPORT OF OPPOSITION TO PETITION TO
RECOGNIZE, CONFIRM, AND ENFORCE PARTIAL FINAL AWARD**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS ....................................................................................... 5

A.  PRH Began this Dispute by Reneging on Its Contractual Obligations ............................. 5
B.  PRH's Notice to BMPAD of the Purported Arbitration was Deficient and, as a Result,
    PRH Selected All Three Conflicted Arbitrators. ............................................... 5
C.  BMPAD and PRH Sued Each Other in New York State Court to Determine the Legality
    of the Purported Arbitration Clauses in the Fuel Supply Contract. ............................. 6
D.  PRH Filed a Supplemental Rule B Action Here, Illegally Attaching BRH Assets for
    "Security" in its Dispute with BMPAD. ........................................................ 7
E.  BMPAD Has Consistently Challenged the Arbitrability of This Dispute in PRH's
    Purported Arbitration, which was Illegal Since its Inception, Transparently Mired in
    Conflicts of Interest, and Violative of BMPAD's Due Process Rights. ........................... 9

ARGUMENT ....................................................................................... 12

A.  PRH's Purported Arbitration is Illegal Under Haitian Law and PRH's Purported
    Arbitration "Award" Is Meaningless. ......................................................... 12
    1.  Haitian Law Precludes Arbitration of Disputes between Domestic Entities and
        Government Agencies. .................................................................... 12
    2.  Because Haitian Law Precludes Arbitration, No Arbitral Award Procured by PRH May
        Be Recognized or Enforced Here. ......................................................... 15
B.  The New York Convention Does Not Apply to This Dispute. ...................................... 16
    1.  There Is No International Element of This Dispute. ...................................... 16
    2.  Multiple Defenses to Enforcement Exist Even if the New York Convention Applies. ......... 18
C.  PRH Seeks Recognition of the Purported Arbitral Order Under the Court's Maritime
    Jurisdiction, Even Though There is no Maritime Jurisdiction Here. ............................ 19
D.  PRH Misrepresents the Purported Arbitration. ................................................ 21
E.  The Arbitrability Issue Is Directly Before a New York State Court. .......................... 22
F.  PRH'S Action Should Be Dismissed as a Sanction for its Deception and Dishonesty in
    This Court. ................................................................................. 23

CONCLUSION ..................................................................................... 24

# TABLE OF AUTHORITIES

CASES

*Alphamate Commodity GMBH v. CHS Europe SA*, 627 F.3d 183 (5th Cir. 2010) ----------------- 22
*Bergesen v. Joseph Muller Corp.*, 710 F.2d 928 (2d Cir. 1983) ------------------------------------ 19
*Brosonic Co. v. M/V "Mathilde Maersk,"* 270 F.3d 106 (2d Cir. 2001); *Alphamate Commodity
    GMBH v. CHS Europe SA*, 627 F.3d 183 (5th Cir. 2010) ------------------------------------- 3, 23
*CBF Indústria de Gusa S/A v. AMCI Holdings, Inc*., 850 F.3d 58, 71-72 (2d Cir. 2017) --------- 18
*Esso Exploration and Production Nigeria Limited v. Nigerian National Petroleum Corporation*,
    397 F.Supp.3d 323 (S.D.N.Y. 2019) --------------------------------------------------------------- 2, 16
*Fireman's Fund Ins. Co. v. United Mexican States, NAFTA/ICSID* Case No. ARB(AF)/02/1,
    Decision on the Preliminary Question, ¶ 64 (July 17, 2003) ------------------------------------- 14
*Folksamerica Reinsurance Co. v. Clean Water of New York, Inc*., 413 F.3d 307 (2d Cir. 2005) 22
*Redmon v. Lake Cty. Sheriff's Office*, 414 F. App'x 221, 223, 226 (11th Cir. 2011) --------------- 25
*Schlumberger Tech. Corp. v. United States*, 195 F.3d 216, 217 (5th Cir. 1999) ------------------- 20
*Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc*., 109
    F.3d 105, 37 Fed. R. Serv. 3d 531 (2d Cir. 1997) ------------------------------------------------ 22
*Young v. Sec'y Fla. for Dep't of Corr.,* 380 F. App'x 939, 940-41 (11th Cir. 2010)--------------- 25

STATUTES

9 U.S.C. § 202 -------------------------------------------------------------------------------------------------- 19
9 U.S.C. § 207 (Federal Arbitration Act) ------------------------------------------------------------------ 19

OTHER AUTHORITIES

Haitian Civil Code, Article 10------------------------------------------------------------------------------- 13
Haitian Code of Civil Procedure, Article 956, Paragraph 2 ----------------------------------------- 13, 14

RULES

22 CFR § 92.54------------------------------------------------------------------------------------------------- 6

Respondent, Haiti's Bureau De Monétisation De Programmes d'Aide au Developpment ("BMPAD"), submits this Memorandum of Law in Support of its Opposition to Petitioner Preble-Rish Haiti, SA's ("PRH") Petition to Recognize, Confirm, and Enforce Partial Final Award (Dkt. Nos. 4-8).

## PRELIMINARY STATEMENT

PRH's purported arbitral award was secured by countless half-truths and conflicts of interest, and it culminates PRH's peculiar scheme to illegally attach Intervenor Banque de la République d'Haïti's ("BRH") assets as security for an "arbitration" that cannot exist as a matter of Haitian and international law. True to form, PRH once again is not being entirely forthright with this Court about the purported arbitral award. PRH's petition should be denied for at least four reasons.

*First*, Haitian law unequivocally disallows any arbitration between a Haitian domestic entity (such as PRH) and a Haitian governmental agency (such as BMPAD). *See* Declaration of Bernard Gousse in Support of Respondent's Opposition to Petition to Recognize, Confirm, and Enforce Partial Final Award ("Gousse Decl."), ¶¶ 3-4. Simply put, PRH's purported arbitration cannot exist under Haitian law and, as such, PRH may not have its "award" recognized, confirmed, or enforced here or anywhere else. Given that PRH's illegally constituted and conflicted "arbitration panel" had no jurisdiction to begin with, the subject "award" should not be recognized because arbitration between these two entities is illegal. This very issue is now pending in New York state court, where BMPAD has sought a permanent stay of this sham arbitration.

*Second*, PRH's attempt to enforce its purported "arbitral award" makes a key, and ultimately fatal, presupposition: that the dispute between BMPAD and PRH involves some

element of international trade that can be the subject of an international arbitration, and thus enforceable under the New York Convention. Not so. The dispute between BMPAD and PRH is wholly Haitian. It involves a Haitian domestic entity (PRH) and a Haitian government entity (BMPAD) that entered contracts governed by Haitian law. Hence, there is no international dispute here, and no purported arbitral award may issue. *See* Gousse Decl., ¶¶ 5-9, 12; *Esso Exploration and Production Nigeria Limited v. Nigerian National Petroleum Corporation*, 397 F.Supp.3d 323 (S.D.N.Y. 2019) (holding it was inappropriate to confirm arbitral award between a Nigerian domestic entity and a Nigerian government entity where the Nigerian government entity contested the arbitrability of the dispute under Nigerian law). The New York Convention does not apply here given the domesticity of this dispute, and PRH's tainted "award" should not be enforced given the dispute between the parties is not arbitral in the first place. This of course makes sense given where and how this dispute began—in Haiti, between two Haitian entities, over fuel-supply contracts governed by Haitian law and intended for the benefit of the Haitian citizenry. Importantly, the Dean of the Court of First Instance in Port-au-Prince preliminarily ruled on the merits of this dispute when it issued an order that PRH complete its final fuel delivery to BMPAD. *See* Declaration of John B. McDonald in Support of Respondent's Opposition to Petition to Recognize, Confirm, and Enforce Partial Final Award ("McDonald Decl."), ¶ 11, Exhs. J-1, J-2.

  ***Third***, even if the New York Convention did apply here, PRH makes another false presupposition in its petition: that the underlying contracts giving rise to the dispute between PRH and BMPAD are maritime in nature, and thus provide this Court with maritime jurisdiction to enforce any purported award at all. Again, not so. A simple reference to "maritime" obligations in a contract does not make an otherwise standard product purchase and delivery

order a maritime transaction. *See generally Brosonic Co. v. M/V "Mathilde Maersk,"* 270 F.3d 106 (2d Cir. 2001); *Alphamate Commodity GMBH v. CHS Europe SA*, 627 F.3d 183 (5th Cir. 2010). This action is captioned in admiralty, without any basis for admiralty jurisdiction to begin with, so it must fail.

*Fourth* and finally, PRH has misled this Court about the status of its purported arbitration between these two Haitian entities and BMPAD's position regarding that proceeding. PRH and its arbitrators held a purported security hearing in the middle of a COVID-19 surge in Haiti, less than three weeks after the assassination of Haiti's President, and despite BMPAD's reasonable request that any hearing be stayed until such time as BMPAD's counsel could communicate with its client and witnesses. PRH's purported interim arbitral "award" is the product of a hearing held without BMPAD's participation and that purported award's text is the subject of multiple email exchanges between PRH's counsel and PRH's handpicked arbitrators about exactly what PRH needed the award to say *for PRH's benefit before this Court*. According to PRH, the Court should hold on to BRH's attached funds and transfer them to another New York bank of PRH's choosing to act as security for this purported "arbitration." Never mind that the attachment of BRH funds was improper in the first place.

Tellingly, PRH's arbitration panel completed its work with PRH's counsel just days after PRH filed its response to BMPAD's Motion to Vacate PRH's improper Supplemental Rule B attachment in this Court, where PRH's "forthcoming arbitral award" was central in its argument that the Court stay the Motion to Vacate and hear PRH's request for enforcement instead. Just about a week after the arbitration's purported partial interim award, PRH attached it to a letter requesting this Court (i) recognize the "award" and (ii) simultaneously stay PRH's procedurally and substantively lacking Supplemental Rule B action—but still transfer the illegally attached

3

BRH funds into a bank account of PRH's choice. The full context of PRH's scheme is therefore now on display:

1.  PRH *ex parte* attached BRH funds (through countless misrepresentations to this Court);

2.  PRH procured an illegal arbitral award without BMPAD's participation and while the issue of arbitrability was squarely before another New York court;

3.  Once BRH funds were attached, PRH sought to stay any litigation over their release;

4.  PRH now seeks to have this Court transfer the BRH funds to a bank of PRH's choice, even though the attachment had no basis in law or fact to begin with, in order to act as security for an arbitration that was also illegal to begin with. PRH of course describes its enforcement action as summary in nature and virtually immune from this Court's scrutiny.

The facts, their timeline, United States law, and Haitian law all demonstrate there is no basis in law or fact to recognize or enforce PRH's purported award here or anywhere else.[1] PRH's hands are unclean. BMPAD, on the other hand, has nothing to hide and has already paid PRH over $100 million. PRH's request that the Court recognize, confirm, or enforce the purported arbitral award should be denied, and the Court should no longer tolerate PRH's never ending misrepresentations.

---

[1] The same holds true for PRH's attempt to open a second front against BMPAD by consistently threatening the Government of Haiti's current fuel supplier, BB Energy, with tortious interference lawsuits and then improperly seeking to seize funds belonging to BB Energy when BB Energy refused to breach its fuel supply contract with BMPAD. In an effort to reduce the administrative burden on this Court's docket in connection with PRH's Petition, BMPAD refers the Court to Dkt. No. 34 in yet *another* Supplemental Rule B action that PRH filed in the United States District Court, Southern District of Texas, where PRH was unquestionably dishonest to that Court *about these proceedings and the New York state court action*. *See* Preble-Rish Haiti SA v. BMPAD, Case No. 4:21-cv-01953, Dkt. No. 34. PRH made this Court aware of the Southern District of Texas Action when it attached a ruling from that Court at Dkt. No. 44 in the related Rule B proceeding.

**STATEMENT OF FACTS**

The litigation terrain PRH has created for this dispute represents an enormous waste of judicial resources and has led to the temporary illegal attachment of BRH's funds.

**A.  PRH Began this Dispute by Reneging on Its Contractual Obligations.**

BMPAD has a longstanding dispute with PRH over PRH's failure to adhere to the terms of a fuel supply contract between BMPAD and PRH.[2] *See* Declaration of Ignacio Saint-Fleur in Support of Defendant BMPAD's Motion to Vacate Supplemental Rule B Attachment, Dkt. No. 25 in the related Rule B proceeding, ("Saint-Fleur Decl."), ¶ 3. The disputed contract at issue only references maritime provisions in connection with *standard and incidental* delivery requirements for the subject fuel. *See id*. ¶ 4. At that time, BMPAD had already paid over $100 million to PRH under the fuel supply contract and its various predecessor contracts. *See id.*, ¶ 7. BMPAD does not actually owe PRH anything. *See id.* Rather, PRH owes BMPAD more than $10 million for charging BMPAD more than the amount the parties agreed to pursuant to the initial bidding process and resulting fuel supply contract. *See id.* In fact, a Haitian court entered a preliminary order at the beginning of this dispute directing PRH to release its final fuel delivery pursuant to the subject contracts. *See* McDonald Decl., ¶ 11, Exhs. J-1, J-2.

**B.  PRH's Notice to BMPAD of the Purported Arbitration was Deficient and, as a Result, PRH Selected All Three Conflicted Arbitrators.**

Several months after issuance of the Haitian order, PRH attempted to initiate an illegal arbitration between the two parties. *See* Saint-Fleur Decl., ¶ 5. PRH's service of notice of its illegal arbitration was woefully defective in several ways. It was not properly served on BMPAD because Haiti is not a signatory to the Convention on the Service Abroad of Judicial and

---

[2] The dispute between PRH and BMPAD concerns the final contract in a series of contracts between them for the purchase and sale of fuel in Haiti. PRH's petition seeks to enforce a purported arbitral award relative to that last contract.

Extrajudicial Documents in Civil or Commercial Matters, more commonly known as the Hague Service Convention, so formal service requires letters rogatory as defined by 22 CFR § 92.54.[3] *See* McDonald Decl., ¶ 2. Moreover, PRH attempted to initiate the arbitration by serving notice in English, rather than French—the language of the contract, the parties, and the applicable law. *See id.*

As a result of this defective service, PRH moved forward to select its own arbitrators, and when it did, it selected at least one arbitrator who was a former partner with PRH's counsel, and one arbitrator that ultimately did not participate in drafting the subject arbitral award at all. *See* McDonald Decl., ¶ 3. Had BMPAD been properly served with notice, it would have at least been able to choose one of the arbitrators and had the third arbitrator chosen by the first two. It also would have objected to selection of the purported arbitrators on conflict grounds because one formerly worked as a partner at PRH's counsel's law firm and another apparently shares membership in a small private association with PRH's counsel. *See id.*

### C. BMPAD and PRH Sued Each Other in New York State Court to Determine the Legality of the Purported Arbitration Clauses in the Fuel Supply Contract.

PRH served a procedurally deficient demand for arbitration on BMPAD late last year, contending that the contract between the parties called for arbitration of their domestic (wholly Haitian) dispute in New York City. *See* Saint-Fleur Decl., ¶ 5. BMPAD therefore filed a New York CPLR § 7503 Special Proceeding in New York state court, Commercial Division, seeking a permanent stay of any arbitration between BMPAD and Plaintiff. *See id.*, ¶ 8.

---

[3] 22 CFR § 92.54 provides: "In its broader sense in international practice, the term letters rogatory denotes a formal request from a court in which an action is pending, to a foreign court to perform some judicial act. Examples are requests for the taking of evidence, the serving of a summons, subpoena, or other legal notice, or the execution of a civil judgment."

In this New York state court action, BMPAD advances the following arguments, all supported by an affidavit from the leading authority on Haitian law:

- Service of PRH's notice of intent to arbitrate was deficient under Haitian law because it was not provided in French. *See* McDonald Decl., ¶ 4, Exhs. B at 6-7 and C at 5-6.

- The arbitration provision in the fuel supply contracts is illegal under Haitian law and, therefore, invalid and unenforceable. *See* Gousse Decl., ¶¶ 3-15. The dispute is between BMPAD, a Haitian governmental agency, and PRH, a domestic Haitian company, so it must be governed by Haitian law, and it must be resolved in Haitian courts. *See id.* BMPAD presents expert testimony for this proposition, explaining that under the Haitian Civil Code, "one cannot arbitrate disputes to which the State, public administrations and institutions, minors and incapable adults are involved." *See id.*, ¶ 3. For that reason, "[t]he arbitration provision contained in the Agreements is invalid under Haitian law" and the arbitration is improper. *See id.*

- BMPAD and Haiti assert that, even if the New York state court disregards the Haitian Civil Code on the above issues, because there is no cross-border exchange of goods, the transactions between PRH and BMPAD cannot be deemed to have been international transactions, which could subject a dispute arising under them to an international arbitration. *See* McDonald Decl., ¶ 4, Exh. C at 7-8.

BMPAD also contends that PRH engaged in corruption to secure the arbitration clauses in the subject contract. *See* Saint-Fleur Decl., ¶ 6. PRH responded to BMPAD's CPLR § 7503 action by countersuing BMPAD in the same state court and the same action, seeking a ruling that BMPAD must participate in PRH's illegal arbitration. *See* McDonald Decl., ¶ 4. A hearing on the Parties' respective state court applications is currently set for September 27, 2021. *See id.*, ¶ 7.

### D.  PRH Filed a Supplemental Rule B Action Here, Illegally Attaching BRH Assets for "Security" in its Dispute with BMPAD.

Once PRH's illegal arbitration was underway, and after BMPAD and PRH sued each other over the arbitrability of their dispute in New York state court, PRH promptly applied to this Court for an *ex parte* Supplemental Rule B attachment of BRH assets as purported security for its dispute with BMPAD, even though BMPAD is located in this District and even though

BMPAD and PRH had sued each other in New York state court regarding the arbitrability of their wholly Haitian, domestic dispute. *See* Dkt. No. 1 in related Rule B proceeding. In that application, PRH unequivocally misrepresented to this Court that the funds it sought to attach belonged to BMPAD, when in fact the funds belonged to BRH. *See id.*; Dkt. Nos. 22-25 (BMPAD's Motion to Vacate Attachment) in related Rule B proceeding; Dkt. Nos. 26-28 (BRH's Motion to Vacate Attachment). PRH also unequivocally misrepresented to this Court that BMPAD and the Republic of Haiti could not be found within this district even though the Republic of Haiti has a New York City consulate.

Specifically, on June 4, 2021, PRH filed its Supplemental Rule B attachment action here, and on June 8, 2021, an order directing the clerk to issue Process of Maritime Attachment and Garnishment in the amount of up to $29,290,086.91 was issued. *See* Dkt. No. 12. PRH's attachment order was thereafter amended and became a Supplemental Order. *See* Dkt. No. 18. When BMPAD learned of this *ex parte* attachment, it moved to vacate the attachment by presenting the following arguments:

- The attached funds and the account do not belong to BMPAD, which is a separate government entity from BRH.

- BMPAD is located in this District and thus PRH cannot meet its burden to show that Supplemental Rule B jurisdiction exists.

- There is no applicable exception under the Foreign Sovereign Immunities Act, which would allow attachment of property belonging to BRH.

- The Rule B Attachment should be vacated under equitable vacatur grounds— specifically because BMPAD is subject to suit in an adjacent jurisdiction: the New York state court where BMPAD has moved to stay and enjoin PRH's arbitration and in which PRH has countersued BMPAD.

- There is already *in personam* jurisdiction over BMPAD in the Southern District of New York because BMPAD (1) has invoked New York state court jurisdiction to challenge the arbitration and (2) because BMPAD is subject to service of process in New York at the Haitian consulate located there.

- The fuel supply contracts forming the basis of PRH's claims are not maritime in nature, and PRH has no maritime claims, making the exercise of admiralty jurisdiction improper and requiring vacating of the Rule B attachment.

- Equity demands that the Rule B Attachment be vacated.

Shortly thereafter, BRH—having had nearly $30 million of its funds attached when it has nothing to do with this dispute—moved to intervene in this action and filed its own motion for vacutur of the Supplemental Order. *See* Dkt. Nos. 26-28.

On August 9, 2021, PRH wrote this Court a letter asking it to stay these pending motions to vacate PRH's improper Supplemental Rule B *ex parte* attachment. *See* Dkt. No. 42. PRH stated in its letter that it sought a stay of the pending motions to vacate so it could present its purported arbitral award to this Court for recognition and enforcement, as well as to seek the transfer of the attached funds (which this Court has temporarily restrained) to a New York bank to hold as security for PRH's claims set forth in the purported arbitration. *See id.* The Court summarily denied that request on August 12, 2021. *See* Dkt. No. 48.

### E. BMPAD Has Consistently Challenged the Arbitrability of This Dispute in PRH's Purported Arbitration, which was Illegal Since its Inception, Transparently Mired in Conflicts of Interest, and Violative of BMPAD's Due Process Rights.

This brings us to the circumstances under which PRH's purported arbitration panel issued its purported arbitral award in the first place. PRH has been dishonest with this Court about the circumstances under which PRH's purported arbitrators issued their "partial final award," and PRH has also not been forthcoming about why PRH's improperly selected and hand-picked arbitrators issued the "partial final award" when they did. However, the *undisputed facts* surrounding the purported arbitral award, and its timing, make clear that PRH was up to foul play from the start. PRH sought to marry its improperly secured arbitration award with its prior illegal

9

Supplemental Rule B attachment to transfer attached BRH funds to yet another New York bank. *See* Dkt. No. 42.

At the same time that the New York state court has been pending, where PRH and BMPAD have sued each other seeking a ruling on the fundamental issue now before this Court, PRH has been pressing its case in arbitration while BMPAD has maintained that no arbitration is appropriate unless and until the New York state court compels BMPAD's participation. *See* Saint-Fleur Decl., ¶ 11. Several times since the inception of PRH's purported arbitration, BMPAD has made clear to the arbitrators that they have no jurisdiction over this wholly Haitian dispute, and over two Haitian parties who each have invoked New York state court jurisdiction to determine whether these issues are arbitrable at all. *See* McDonald Decl., ¶ 5, Exhs. E-F.

Despite the existence of the New York state court action, despite the fact that counsel for BMPAD was not able to communicate with its client or its witnesses due to the crisis in Haiti, and despite its own lack of jurisdiction, PRH's purported arbitrators insisted on having a hearing about interim security on July 28-29, 2021. *See* McDonald Decl., ¶ 6, Exh. G. Separate and apart from BMPAD having sued in New York state court to enjoin this arbitration, Haiti was in the midst of a COVID-19 surge and its President was tragically assassinated mere weeks before this purported hearing. *See id.*, ¶ 7. As a result of these tragedies, BMPAD requested and received a 60-day stay of a hearing in the New York state court action because Haiti's President issues all directions to BMPAD's counsel. *See id.*, Exh. H. Obviously, to prepare for a hearing BMPAD needed input and participation from its client, as well as its key witnesses. *See id.* In neutral and impartial fashion, the New York state court granted BMPAD's request for a temporary stay. *See id.*

BMPAD also sought to stay PRH's purported arbitration hearing on security in the wake of the Haitian President's assassination. *See* McDonald Decl., ¶ 7. PRH's arbitrators refused this request. *See id.*, ¶ 8. BMPAD's counsel then issued a letter to the purported arbitrators again outlining why any such hearing—and indeed the entire purported arbitration—was illegal in the first place, but also stating that the purported arbitration panel should stay any hearings in any event given the ongoing tragedies that were impacting the island of Haiti. *See id.*, ¶ 6, Exh. G. Nevertheless, PRH and its arbitrators proceeded with their "hearing" on July 28.

The following timeline of facts then occurred:

1. On July 28, PRH and its arbitrators held a purported arbitration hearing about whether BMPAD should post security in connection with the arbitration. *See* McDonald Decl., ¶ 8. BMPAD did not participate in this hearing because of (i) its inability to communicate with its client, (ii) the complete unavailability of its key witnesses, (iii) the pending lawsuit in New York state court to determine arbitrability of the dispute, and (iv) its overall objections to the illegal arbitration. *See id.*, ¶ 6, Exh. G.

2. On July 29, 2021, PRH stated in its response to BMPAD's motion to vacate the Supplemental Rule B attachment in this Court that the Court should consider staying the motions to vacate presently before it so that PRH could present the Court with an expected partial final award from PRH's purported arbitrators, which the Court should somehow use to transfer BRH's attached funds here into another New York bank account as security for the purported arbitration. *See* Dkt. No. 32.

3. Between (Sunday) August 1, 2021, and (Thursday) August 5, 2021, PRH and its arbitrators exchanged several emails to map out the terms of the purported partial final award against BMPAD. *See* McDonald Decl., ¶ 9, Exh. I.

4. On Friday, August 6, 2021, PRH's arbitrators issued a purported final partial arbitration award directing BMPAD to post security.[4] *See id*., ¶ 10.

5. On Monday, August 9, 2021, PRH attached the purported partial final award issued by its arbitrators to its request made to *this* Court to stay the motions to vacate. *See* Dkt. No. 42.

---

[4] On Saturday, August 7, 2021, one arbitrator sent an email, noting that he had been unable to fully "participate" in the arbitration and its award.

6. The Court summarily denied PRH's request for a stay. *See* Dkt. No. 48.

7. PRH nevertheless now still seeks to recognize and enforce its arbitration award here. *See* Dkt. No. 42.

**ARGUMENT**

PRH's petition to recognize, confirm, and enforce its purported arbitral award should be denied because as a matter of Haitian law—which obviously controls the French language contract between two Haitian entities for supplying fuel to Haiti—the arbitration is illegal. An "award" emanating from an arbitration that is illegal under Haitian law cannot be enforced against Haiti. Additionally, because the dispute is a wholly domestic one between two Haitian entities and because the arbitration award is a domestic one as it stands before this Court, the Convention on the Recognition and Enforcement of *Foreign* Arbitral Awards, also known as the "New York Arbitration Convention," is wholly irrelevant. Even if the Convention were relevant, several defenses to enforcement exist here. In any event, PRH's petition also fundamentally fails for lack of maritime jurisdiction.

**A. PRH's Purported Arbitration is Illegal Under Haitian Law and PRH's Purported Arbitration "Award" Is Meaningless.**

Haitian law clearly states, in a codified book, that arbitration between a domestic Haitian entity and a Haitian government entity is illegal. Because any arbitration between these two parties is illegal as a matter of Haitian law, PRH's purported award cannot be enforced here.

**1. Haitian Law Precludes Arbitration of Disputes between Domestic Entities and Government Agencies.**

Haiti has adopted the French civil law system, including the French judicial structure and codification system. Six codes were enacted between 1825 and 1826: the Civil Code, the Code of Civil Procedure, the Commercial Code, the Criminal Code, the Code of Criminal Procedure, and the Rural Code. With minor changes, these codes resembled their French antecedents. Statutes

are the main source of Haitian law, and French doctrine and jurisprudence are the basis for interpreting that law.[5] In civil law jurisdictions like Haiti, the sources recognized as authoritative are principally legislation—especially codifications in constitutions or statutes enacted by governments—and secondarily, custom.

The arbitration provisions contained in the subject contract are invalid under Haitian law, which law expressly forbids state entities from engaging in arbitration. Haitian Code of Civil Procedure, Article 956, Paragraph 2 provides: "However, disputes to which the Government, public administrations and bodies, minors and incapacitated adults are parties may not be arbitrated." Furthermore, the Decree of November 23, 2005 on the Cour Supérieure des comptes et du Contentieux Administrative (Superior Court of Accounts and Administrative Litigation), Article 23, Paragraph B provides: "The Administrative Courts have jurisdiction over contractual disputes between the Government and local authorities and third parties." Finally, Haitian Civil Code, Article 10 provides: "Laws pertaining to public concerns and moralities cannot be waived through private agreement." Accordingly, BMPAD did not, and indeed could not, waive the exclusive jurisdiction of the Administrative Courts of Haiti when BMPAD entered into the Agreements. *See* also *Fireman's Fund Ins. Co. v. United Mexican States, NAFTA/ICSID* Case No. ARB(AF)/02/1, Decision on the Preliminary Question, ¶ 64 (July 17, 2003) ("[T]he Tribunal does not believe that under contemporary international law a foreign investor is entitled to the benefit of the doubt with respect to the existence and scope of an arbitration agreement").

---

[5] Thomas Reynolds & Arturo Flores, Haiti, in Foreign Law: Current Sources of Codes and Basic Legislation in Jurisdictions of the World, 3 (Fred B. Rothman, 1997) updated 8/2003. *See also* Gerald Perry, Haiti in International Encyclopedia of Comparative Law, National Reports, v. 1 at H4.; see also, Jean Marie Mondésir, Le Droit Haïtien available at http://www.chez.com/juristehaitien/; see also Jean Marie Mondésir, La Codification en Haïti available at http://membres.lycos.fr/civiliste/.

Here, Haitian law must govern the Agreements because they were executed by and between two Haitian entities, in the form of a Haitian contract in Haiti's official language. The Agreements were executed in Haiti and they involve the buying of products for delivery to Haiti. The commercial relationship between BMPAD and PRH is essentially no different from a New Yorker buying a bottle of French wine from their local NYC grocery.

Because of the decidedly *intra*-Haitian nature of this dispute, "[t]he arbitration provision contained in the Agreements is invalid under Haitian law." Gousse Decl., ¶ 3. Declarant Bernard Gousse, who has submitted a declaration in support of this Opposition, is one of the foremost scholars on Haitian law. *See* Gousse Decl., ¶ 1. He is well versed in Haitian international and domestic law and he is the Dean of Haiti's best and best known law school. *See id*. Mr. Gousse confirms in his affidavit that the provision within the contracts at issue here providing for arbitration of any disputes is illegal. *See id.*, ¶¶ 3-6. According to Mr. Gousse: "The limitations of this Article [Article 956, Paragraph 2 of the Haitian Code of Civil Procedure] are clear and unequivocal. It is incorrect to imply that public institutions of industrial or commercial nature could escape such prohibition. The law does not make such distinction and therefore the principle *ubi lex non distinguit, nec nos distinguere debemus* (where the law does not distinguish, the interpreter shall not distinguish either) shall apply." Gousse Decl., ¶ 3. Arbitration between BMPAD and PRH is therefore plainly precluded by Haitian law.[6]

---

[6] PRH secured the arbitration provision in this contract via artifice and corruption. *See* Saint-Fleur Decl., ¶ 6. In any event, if, for instance, the subject contract called for arbitration of disputes over an agreement for murder for hire, surely that provision, calling for arbitration of an illegal agreement, could not be enforced. So too here.

### 2. Because Haitian Law Precludes Arbitration, No Arbitral Award Procured by PRH May Be Recognized or Enforced Here.

Since the arbitration provision in the subject contract is illegal, any award issued in PRH's purported arbitration cannot be enforced here. *See Esso Exploration and Production Nigeria Limited v. Nigerian National Petroleum Corporation*, 397 F.Supp.3d 323 (S.D.N.Y. 2019) ("*Esso*"). In *Esso*, Esso (collectively, subsidiaries of the Exxon Mobile Corporation and the Shell Oil Company) and the government of Nigeria ("NNPC") had a dispute over a contract related to an oil field off the coast of Nigeria. 397 F.Supp.3d 323, 329. The parties had agreed in their contract that any disputes arising out of the contract would be arbitrated in Nigeria subject to Nigerian law. *Id.* at 320-30. The arbitration clause at issue addressed disputes concerning the interpretation or performance of the contract. *Id.*

Esso and NNPC had a disagreement over the interpretation of one of the parties' obligations under the subject contract, leading Esso to commence arbitration against NNPC. *Id.* at 330. Nigeria challenged whether the purported arbitration could proceed at all given recent Nigerian law (as interpreted by Nigerian courts) directly related to the issue. *Id.* Eventually, Esso obtained an arbitral award and brought it to the Southern District of New York for enforcement (including a $1.799 billion judgment). *Id.* at 331. NNPC moved to dismiss the enforcement action on several grounds, one of which being that arbitration of the dispute was precluded by Nigerian law, as interpreted by Nigerian courts. *Id.*

The *Esso* Court granted NNPC's motion to dismiss. *Id.* at 356. The Court held, in part, that because "NNPC contended '[f]rom the outset of [arbitral] proceedings ... that the Tribunal lacked jurisdiction because the dispute between Petitioners and NNPC was allegedly a 'tax dispute,' rather than a contractual one'", the motion to dismiss should be granted and the arbitral award should not be confirmed. *Id.* at 354-55.

So too here. From the start, BMPAD has challenged the arbitrability of the dispute between these parties—in PRH's purported arbitration, in the New York state court action, and in this Court. The *Esso* case counsels that the instant purported arbitration award should not be enforced because of BMPAD's challenge to the arbitrability of this dispute ***based on application of Haitian law.*** *Esso*'s ruling was based on a record made in a Nigerian court about the dispute directly before the Court. *See Esso*, 397 F.Supp.3d at 353-55. This dispute is also not foreign to Haitian courts. *See* McDonald Decl., ¶ 11, Exh. J. To the extent that any questions remain about the ultimate disputes of this merit, those questions also belong in Haitian court.

Without jurisdiction to hear the dispute between BMPAD and PRH as a matter of Haitian law, PRH's purported arbitrators could not—and cannot—issue binding awards as against BMPAD and PRH's petition should be denied.

**B.  The New York Convention Does Not Apply to This Dispute.**

Without any international element to this dispute, the New York Convention cannot apply, leaving this Court without jurisdiction to enforce PRH's purported award. Even if the New York Convention does apply, which it cannot, BMPAD has several defenses under the Convention precluding enforcement of PRH's purported award.

**1.  There Is No International Element of This Dispute.**

PRH bases its petition on two substantive hooks: the New York Convention and admiralty jurisdiction (discussed *infra*). The first of those bases also proves fatal to PRH's -petition because no international transaction *and* no foreign country arbitral award is at issue.

"The goal of the [New York] Convention, and the principal purpose underlying American adoption and implementation of it, was to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries."

16

*CBF Indústria de Gusa S/A v. AMCI Holdings, Inc.*, 850 F.3d 58, 71-72 (2d Cir. 2017) (citations omitted). Both the New York Convention and its implementing legislation in Chapter 2 of the Federal Arbitration Act "envision a single-step process for reducing a foreign arbitral award to a domestic judgment." *Id.*

Two key phrases appear in the foregoing precedent: "international contracts" and "foreign arbitral award." These two phrases underline the original intent of the New York Convention, which was to determine how a Court should view a "foreign arbitral award" arising from an "international contract." There has been no "international contract" here from the start.

The subject dispute is wholly Haitian: PRH is a domestic Haitian company; BMPAD is a Haitian government entity. The contract between these two entities is not international at all—it is simply a purchase and sale contract for fuel between a Haitian (domestic) company entity and a Haitian (domestic) governmental entity. In the volumes of paper PRH has filed with this Court, it nowhere cites any case or anything else that might demonstrate this contract is an "international" one. The Merriam Webster Dictionary provides the following three definitions for the word "international:" (1) of, relating to, or affecting two or more nations ("international trade"); (2) of, relating to, or affecting two or more nations ("international movement"); (3) active, known, or reaching beyond national boundaries ("international reputation"). The dispute between PRH and BMPAD is of, or relating to, only one nation. It does not reach beyond the national borders of Haiti, but for PRH's antics here in New York. Without any international element, the New York Convention simply cannot apply, and PRH's petition fails.

PRH's petition relies principally on *Bergesen v. Joseph Muller Corp.*, 710 F.2d 928 (2d Cir. 1983) for the proposition that an arbitral award entered in New York affecting two international parties subject to the Convention renders the award enforceable here. *See* Petition,

¶¶ 98-99. Of course, that proposition is true and BMPAD does not dispute it. That case is nevertheless inapposite here because it involved business between Norway and Switzerland—two distinct countries, in an international dispute. *See id*. at 929. No such international element exists here and, as such, the New York Convention does not apply.

It also bears mentioning that the "New York Convention" is shorthand for The Convention on the Recognition and Enforcement of Foreign Arbitral Awards, and no foreign arbitral award is at issue in this case—only a New York arbitration award is before this New York court.

     **2.  Multiple Defenses to Enforcement Exist Even if the New York Convention Applies.**

Even if the New York Convention did apply here, which it does not, BMPAD has several defenses to enforcement of the purported arbitration award under the Convention itself. As one Circuit has noted:

> Article III of the New York Convention requires signatories to recognize arbitral awards as binding and enforce them just as easily as domestic arbitral awards, subject only to a few defenses: incapacity of a party, illegality of agreement, lack of due process in arbitration, award outside scope of arbitration, improper arbitration panel, and vacated or not-yet-binding award. *See* New York Convention, Arts. III, V.
>
> Furthermore, if the subject matter of the dispute is not capable of settlement by arbitration under the law of the enforcing state or if enforcement of the award by the enforcing state would be contrary to the public policy of the enforcing state, then the enforcing state can also refuse to enforce the award. *See id*. Thus, recognition of an arbitral award is not automatic and can be refused by the enforcing state if the losing party proves one of these defenses.

*Schlumberger Tech. Corp. v. United States*, 195 F.3d 216, 217 (5th Cir. 1999). Several of these defenses are applicable here.

First, as explained above, the purported arbitration provision in the subject contract is precluded by Haitian law because a Haitian domestic entity and a Haitian government entity

cannot arbitrate disputes, rendering the provision illegal. *See* Gousse Decl., ¶ 3. Second, there

has been a lack of due process in the arbitration, given that PRH served defective notice of the

arbitration and then leveraged that lack of notice to choose all three arbitrators. *See* Saint-Fleur

Decl., ¶ 5. Third, there is an improper arbitration panel here: there is unquestionably the

appearance of a conflict of interest when two of the arbitrators are former partners of PRH's

counsel at Blank Rome LLP, and the other arbitrator is directly associated with PRH's counsel

via membership in an organization together. *See* McDonald Decl., ¶ 3.

       Enforcement of PRH's improperly procured arbitration award against a longstanding U.S.

ally is contrary to the public policy of the United States. For these reasons, PRH's purported

arbitral award should not be recognized or enforced even if this Court finds that the New York

Convention applies.

### C. PRH Seeks Recognition of the Purported Arbitral Order Under the Court's Maritime Jurisdiction, Even Though There is no Maritime Jurisdiction Here.

       PRH's petition also fails on another jurisdictional ground: there is no maritime

jurisdiction here because the subject contract is not a maritime contract.. PRH bases its Petition

on 9 U.S.C. § 207 (Federal Arbitration Act). *See* Petition at 18, ¶ 96. 9 U.S.C. § 207 provides

that the Court must have a jurisdictional basis to confirm an award in the first place:

> Within three years after an arbitral award falling under the Convention is made,
> any party to the arbitration may apply ***to any court having jurisdiction under this
> chapter*** for an order confirming the award as against any other party to the
> arbitration. The court shall confirm the award unless it finds one of the grounds
> for refusal or deferral of recognition or enforcement of the award specified in the
> said Convention. (Emphasis added).

According to PRH itself, jurisdiction lies here under 9 U.S.C. § 202, which provides:

> An arbitration agreement or arbitral award arising out of a legal relationship,
> whether contractual or not, which is considered as commercial, including a
> transaction, contract, or agreement described in section 2 of this title, falls under
> the Convention. An agreement or award arising out of such a relationship which is
> entirely between citizens of the United States shall be deemed not to fall under the

Convention unless that relationship involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states. For the purpose of this section a corporation is a citizen of the United States if it is incorporated or has its principal place of business in the United States.

Section 2 referenced in the quote above identifies these disputes as maritime in nature:

A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

PRH's applications for relief from this Court rely entirely on this Court's purported maritime jurisdiction – that is how the parties ended up here in the first place. *See* Dkt. No. 1. But these are not maritime contracts, and no maritime jurisdiction exists.

The sale of goods by itself is not maritime merely because the seller agrees to ship the goods by sea to the buyer. *See generally Alphamate Commodity GMBH v. CHS Europe SA*, 627 F.3d 183 (5th Cir. 2010). As a baseline rule, admiralty jurisdiction arises only when the subject matter of the contract is "purely" or "wholly" maritime in nature or if a nonmaritime feature of a contract is separable from the maritime elements so that it may be severed and litigated independently without prejudice to any party. *See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc*., 109 F.3d 105, 37 Fed. R. Serv. 3d 531 (2d Cir. 1997); dependently without prejudice to any party; *Folksamerica Reinsurance Co. v. Clean Water of New York, Inc*., 413 F.3d 307 (2d Cir. 2005). The subject matter of a maritime contract must be directly and intimately related to the operation of a vessel and navigation; it is not enough that the contract relates in some preliminary manner to maritime affairs. *See Brosonic Co. v. M/V "Mathilde Maersk"*, 270 F.3d 106 (2d Cir. 2001).

20

The fuel supply contract at issue in this case is a basic commercial contract for the sale and purchase of a product – fuel, as between two Haitian domestic entities. The mere fact that such fuel was to be delivered to Haiti via a vessel does not make the contract a maritime contract. If that were the case, any contract involving the purchase of goods that are transported by vessel would be a maritime contract. Under PRH's convoluted analysis, a consumer purchase of a pair of Nike shoes from Alibaba that calls for shipment via vessel freight would be considered a maritime contract from which a maritime claim would arise between buyer and seller. Taking PRH's logic a step further, the United States' importation of more than one trillion dollars in products via vessels every year would all involve transactions that constitute maritime contracts. And a New Yorker buying wine from an NYC grocery would be an international transaction. This is not the law. Without maritime jurisdiction existing at the start of this action, and without maritime jurisdiction existing now, PRH's petition fails.

**D.  PRH Misrepresents the Purported Arbitration.**

Finally, PRH's petition should be denied for the simple fact that PRH has not been forthright with this Court (or any other court, for that matter) about the true nature of what has transpired in its purported arbitration. Yet again, PRH's petition contains several material omissions and misrepresentations of fact.

Though the parties' competing actions have been pending in New York state court, PRH has been pressing its case in its purported arbitration while BMPAD has maintained that no arbitration is appropriate unless and until the New York state court compels BMPAD's participation. *See* Saint-Fleur Decl., ¶ 11. Several times since the inception of PRH's purported arbitration BMPAD has made clear to PRH's hand-picked, conflicted arbitrators that they have no jurisdiction over the dispute between these two Haitian entities, who have a wholly Haitian

21

dispute and who each have invoked New York state court jurisdiction to determine whether these issues are arbitrable at all. *See* McDonald Decl., ¶ 4, Exhs. B-D. Then, despite the existence of the New York state court action, despite the fact that PRH's purported arbitration panel does not have jurisdiction to hear this dispute, and despite BMPAD's inability to participate, PRH's purported arbitrators insisted on having a hearing about interim security on July 28, 2021. *See* McDonald Decl., ¶ 6, 8, Exh. G.

After that, the timeline of events leaves no reasonable conclusion except that PRH and its arbitrators forced a purported interim arbitral award through *just in time* for PRH to retreat from its Supplemental Rule B action by moving to stay those motions to vacate, *but while* PRH itself explained to the Court that it wanted to transfer the improperly attached funds belonging to BRH into another New York bank account to secure the "arbitration award" that PRH's arbitrators issues mere days before PRH filed this petition.

PRH (having lost its chance at maintaining a Supplemental Rule B attachment) again sought to trick this Court through misrepresentations and present this purported arbitration as nothing outside the ordinary normal course. Nothing, in fact, could be further from the truth. The petition should be denied.

### E.  The Arbitrability Issue Is Directly Before a New York State Court.

A final reason the Court should refuse to recognize or confirm PRH's purported arbitral award is that the very issue of whether PRH and BMPAD can arbitrate this dispute is already fully briefed and set for a hearing before Justice Andrew Borrok in New York Supreme Court, Commercial Division, on September 27, 2021. *See* McDonald Decl., ¶ 7. BMPAD and PRH have sued each other in that action, each invoking the New York state court's jurisdiction, for a determination of whether the illegality of the purported arbitration provision renders that provision illegal under Haitian law (it does) and therefore precludes any arbitration between

PRH and BMPAD at all (it also does). PRH's request that this Court enforce an arbitral award it procured through bad faith while seeking to compel BMPAD to arbitrate the dispute in New York state court at the same time should therefore be denied in deference to Justice Borrok's ruling on this issue.

**F.  PRH'S Action Should Be Dismissed as a Sanction for its Deception and Dishonesty in This Court.**

PRH has not made a single application to this Court that did not centrally rely on a material omission or misrepresentation of fact. At the Supplemental Rule B stage, PRH made false statements about who owned the subject Citibank account, knowing full well that BRH and BMPAD were wholly separate entities. At the discovery phase, PRH again made false statements about the use and ownership of that account—and it has failed to present a single shred of evidence suggesting otherwise to date. Now, seeking to enforce a sham arbitration award, PRH again materially misrepresents what has transpired in that action.

This Court has discretion to dismiss this entire action based on PRH's many misrepresentations here. *See, e.g., Young v. Sec'y Fla. for Dep't of Corr.,* 380 F. App'x 939, 940-41 (11th Cir. 2010) (per curiam) (affirming dismissal of third amended complaint based on a plaintiff's failure to disclose prior cases on the court's complaint form); *Redmon v. Lake Cty. Sheriff's Office*, 414 F. App'x 221, 223, 226 (11th Cir. 2011) (per curiam) (affirming dismissal, after directing service of process, of amended complaint raising claims that included denial of proper medical care and cruel and unusual punishment for placement in a "restraint chair" and thirty-seven days of solitary confinement upon discovering prisoner plaintiff failed to disclose one prior federal lawsuit). This entire action should be dismissed, and BRH's funds should be returned to it.

## CONCLUSION

In light of the foregoing, PRH's petition to recognize, confirm, and enforce its purported partial final award should be denied.


Dated:  August 23, 2021
Seattle, Washington

Respectfully submitted,

HARRIS BRICKEN SLIWOSKI LLP

_____
John B. McDonald
600 Stewart Street, Suite 1200
Seattle, WA 98101
(206) 224-5657
john.mcdonald@harrisbricken.com

Attorneys for Bureau De Monétisation De
Programmes D'aide Au Développement

24

## CERTIFICATE OF SERVICE

I hereby certify that on this day I electronically filed the foregoing with the Clerk of the

Court using the CM/ECF system. I transmitted a copy of such documents to the following:

| | |
|---|---|
| William R. Bennett, III<br>Lauren B. Wilgus<br>Rick Antonoff<br>BLANK ROME LLP<br>1271 Avenue of the Americas<br>New York, NY 10020<br>wbennett@blankrome.com<br>lwilgus@blankrome.com<br>rantonoff@blankrome.com<br>*Attorney for Preble-Rish Haiti, SA* | Bertrand Rolf Madsen<br>MADSEN LAW P.C.<br>1115 Broadway, 11th Floor<br>New York, NY 10010<br>bmadsen@madsenlawpc.com<br>*Attorney for Banque de la République d'Haïti* |
| Samuel L. Butt<br>Elizabeth Wolstein<br>SCHLAM STONE & DOLAN LLP<br>26th Broadway, 19th Floor<br>New York, NY 10004<br>sbutt@schlamstone.com<br>ewolstein@schlamstone.com<br>*Attorneys for Banque de la République d'Haïti* | |

I certify under penalty of perjury under the laws of the State of New York that the foregoing is

true and correct this 23rd day of August 2021.

*/s/ John McDonald*
John McDonald, #4938130