UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
PREBLE-RISH HAITI, S.A.,

                          Petitioner,                        21-cv-6704 (PKC)

        -against-

                                               OPINION AND ORDER

REPUBLIC OF HAITI, BUREAU DE
MONÉTISATION DE PROGRAMMES D'AIDE AU
DÉVELOPPEMENT,

                          Respondents.
------------------------------------------------------------x

CASTEL, U.S.D.J.

            Before this Court is a petition by petitioner Preble-Rish Haiti, S.A. ("PRH") to

recognize, confirm, and enforce a Partial Final Award of an international arbitration panel in its

favor against the respondents Republic of Haiti and the Bureau de Monétisation des Programmes

d'Aide au Développement, a Haitian governmental agency (collectively, "BMPAD").[1]  BMPAD

opposes the petition, primarily arguing that (1) the Court lacks jurisdiction to decide the case

because the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("New

York Convention") does not apply and (2) even if the New York Convention did apply,

enforcement would be precluded by several enumerated defenses under the New York

Convention.  (Doc 19 (BMPAD Br.) at 2-3.)

            For the following reasons, PRH's petition is granted.  Familiarity with the filings

---

[1] The Court notes that the agency's name appears to be written with "des Programmes," and not with "de Programmes."  BUREAU DE MONÉTISATION DES PROGRAMMES D'AIDE AU DÉVELOPPEMENT, https://bmpad.gouv.ht. (See also Doc 25-1 (PRH's Nov. 4, 2020 Letter to BMPAD) (The French version of the letter is addressed to " Bureau de monétisation des programmes d'aide au développement (BMPAD)).  The Clerk of the Court is respectfully directed to amend the caption accordingly.

and the Court's orders in this matter and the related matters (21-cv-4960 (PKC) and 21-cv-9040 (PKC)) is presumed.

BACKGROUND

PRH is a company organized under the laws of Haiti with a principal place of business in Pétion-Ville, Haiti.  (Doc 8 (Petition) ¶ 2.)  PRH provides infrastructure-project management and material supply, and as related to the at-issue claims against BMPAD, also acted as a marine transportation fuel supplier and importer of record.  (Id.)  BMPAD are foreign entities organized under the laws of Haiti with a principal place of business in Port-au-Prince, Haiti.  (Id. ¶ 3.)

On May 13, 2020, PRH and BMPAD entered into three contracts whereby PRH agreed to source, ship, and deliver fuel to BMPAD for a fee.  (21-cv-04960 (PKC), Doc 60 (the "Sept. 2021 Order") at 2; Petition ¶¶ 7-8 (citing 21-cv-04960 (PKC), Doc 14-1 (Leconte Aff.) ¶ 2).)  Specifically, PRH agreed to make six monthly shipments of certain fuels, based on the total monthly quantity requested by BMPAD.  (Sept. 2021 Order at 2.)  The first four fuel orders proceeded uneventfully, but BMPAD allegedly fell behind on payments on the fifth order.  (Id.)  Though payment had yet to be received, PRH continued with the sourcing and shipping process, sending reminders to BMPAD as the invoices became due and ships were loaded with BMPAD's fuel.  (Id.)  BMPAD acknowledged receipt of shipping documents for the Haiti-bound ships carrying the unpaid fuel and took possession of the fuel as the ships arrived in Haiti.  However, payment was never sent to PRH.  Eventually, PRH halted all fuel shipments to BMPAD and alleges that BMPAD now owes approximately $27.2 million dollars in damages from the unpaid invoices for fuel delivered, including lost profits.  (Id.)

The three contracts at issue contained identical arbitration clauses, which read as

follows:

### Article 20.  ARBITRATION AND LEGISLATION

In the event of a dispute between the Buyer [BMPAD] and Seller [PRH] under this Contract, the dispute shall be submitted by either party to arbitration in New York before three arbitrators.  The Party initiating the arbitration shall provide written notice of its intention to submit the matter to arbitration.  Such notification shall contain a statement identifying the request for arbitration and specifying the arbitrator appointed by the initiating Party.  Within ten (10) days of such notice of arbitration, the other Party will identify its appointed arbitrator.  If such Party fails to appoint an arbitrator within the applicable 10-day period and fails to give timely notice of such appointment to the Initiating Party, then the initiating Party shall also be entitled to appoint this second arbitrator.  The third arbitrator will be chosen by the two arbitrators thus selected. . . . The decision of the arbitrators shall be final, conclusive and binding on all Parties.  Judgment upon such award may be entered in any court of competent jurisdiction. . . . No arbitrator shall be an employee, representative or agent of a Party and each shall reasonably believe that the selecting Party has the experience, education and expertise in the matters to which the claim relates to enable that person to competently perform such arbitration function.

(Leconte Aff. ¶ 6.)

Pursuant to the arbitration clauses in the three contracts, PRH served a notice demanding arbitration of its claims against BMPAD on November 20, 2020.  (Petition ¶ 83; Sept. 2021 Order at 2.)  The arbitration notice identified Robert G. Shaw as PRH's appointed arbitrator, called upon BMPAD to appoint its own arbitrator, and indicated that if "BMPAD fails to appoint an arbitrator within 10 days, PRH will select an arbitrator on [BMPAD's] behalf.  Both arbitrators will then appoint a third arbitrator."  (Doc 5-1 (Partial Final Award) ¶ 4.)  BMPAD did not appoint the second arbitrator by the required deadline of November 30, 2020 and PRH appointed LeRoy Lambert as the second arbitrator.  (Id. ¶ 5.)  On December 1, 2020, Mr. Shaw and Mr. Lambert appointed Louis Epstein as the third and final arbitrator on the panel,

3

and Mr. Epstein notified the parties of his appointment.  (Id.)  In response, on December 22, 2020, BMPAD filed a petition in the Supreme Court of New York to stay the arbitration pursuant to N.Y. C.P.L.R. § 7503(b) (Case Index No. 657237/2020).  (Partial Final Award ¶ 6; Doc 20-1 at 9.)

       On March 24, 2021, PRH submitted its Initial Claim Statement and Request for an Interim Partial Award of Security to the arbitration panel.  (Petition ¶ 84; Partial Final Award ¶ 7.)  On March 27, 2021, BMPAD responded via e-mail to PRH's Initial Claim Statement and Request for an Interim Partial Award, stating that BMPAD did not recognize the panel's jurisdiction and had filed in state court a petition for a stay and request for a temporary restraining order and preliminary injunction.  (Petition ¶ 84; Partial Final Award ¶ 8.)  On April 5, 2021, in the absence of injunctive relief from state court, the panel ruled that the arbitration would proceed.  (Sept. 2021 Order at 2; Partial Final Award ¶¶ 6-11.)  The panel directed BMPAD to "respond fully and substantively" to PRH's Initial Claim by April 23, 2021.  (Petition ¶ 85; Partial Final Award ¶ 11.)  BMPAD submitted its response on April 23, 2021, PRH submitted its reply on April 30, 2021, and on May 20, 2021, the panel scheduled a remote oral hearing for June 21-23, 2021.  (Petition ¶ 85; Partial Final Award ¶¶ 14-16.)

       On June 2, 2021, BMPAD emailed the arbitration panel, (1) repeating its jurisdictional objections, (2) asserting that "due process would require that any hearing take place live and in-person" and that "various technical issues (including a recent Covid surge) in Haiti" would make a remote hearing and preparations for any hearing a "practical impossibility," and (3) informing the panel that BMPAD "will not be attending any 'hearings' [the panel has] scheduled."  (Partial Final Award ¶ 17.)  On June 4, 2021, the panel responded that the scheduled hearing would proceed as scheduled, noting that (1) sufficient notice had been given, (2) remote

proceedings would not violate due process, (3) depositions are not normally part of arbitration proceedings, (4) BMPAD was free to request document production from PRH for use at the hearing, (5) the panel would require further evidence of technical issues and their effects on BMPAD's preparation for the hearing, and (6) BMPAD may still participate in the hearing while reserving its position that the agreement to arbitrate was invalid under Haitian law.  (Id. ¶ 18.)

On June 9, 2021, BMPAD advised that Ignace Saint-Fleur, BMPAD's director and principal witness, had contracted COVID-19.  (Id. ¶ 19.)  On June 12, 2021, the panel requested further details about Mr. Saint-Fleur's condition and prognosis, and on June 17, 2021, following communications regarding updates on Mr. Saint-Fleur's condition and ability to remotely participate in the hearing, the panel adjourned the hearing to new dates, which were later finalized for July 28-29, 2021.  (Id. ¶¶ 19-23, 26.)  On June 30, 2021, BMPAD advised the panel that Mr. Saint-Fleur had recovered from COVID-19, but on July 16, 2021, requested a 60-day further adjournment.  (Id. ¶¶ 26, 28.)  BMPAD cited the July 7, 2021 assassination of the Haitian president—who allegedly had been overseeing and directing work on the arbitration—and that plaintiff's then attachment of approximately $29 million in a Haitian bank account rendered the arbitration moot.[2]  (Id. ¶ 28.)  On July 21, 2021, the panel denied BMPAD's request for a 60-day adjournment, in essence questioning whether the assassination of President Moise actually hindered the hearing preparation and noting that should BMPAD successfully vacate the maritime attachment in the federal case, it could leave PRH without any security for a potential award.  (Id. ¶¶ 30-31.)

From July 23, 2021 to July 27, 2021, BMPAD and the panel discussed BMPAD's attendance at the hearing scheduled to begin on July 28, 2021—BMPAD maintained its position

---

[2] The Court later vacated this attachment in the Sept. 2021 Order.

that it could and would not attend the hearing, while the panel retained the July 28, 2021 start date, rejected BMPAD's allegations of bias from the panel and violations of due process, and encouraged BMPAD to attend the hearing to contest PRH's application, cross-examine PRH's witnesses under oath, and present its own witnesses while still preserving any rights it may have. (Id. ¶¶ 32-34.)  The hearing took place as planned on July 28, 2021—although the lawyers for BMPAD were given a link to the remote session, they did not participate.  (Id. ¶ 35.)  On July 29, 2021, having received no response from BMPAD as to their participation on the second day of the hearing, the panel informed the parties that the second day of the hearing was cancelled.  (Id. ¶ 36.)  On August 6, 2021, the arbitration panel issued a Partial Final Award granting PRH's petition for a pre-award security and directing BMPAD to deposit $23,043,429.79 into an escrow account.  (Partial Final Award ¶ 119.)

PRH commenced the instant action pursuant to the New York Convention, June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38, and Chapter Two of the Federal Arbitration Act, 9 U.S.C. §§ 201 et seq. (the "FAA"), seeking an order recognizing, confirming and enforcing the Partial Final Award against BMPAD.  (Petition at 1-2.)

DISCUSSION

I.       Applicable Law

Where an arbitration "involve[s] parties domiciled or having their principal place of business [outside of the United States,]" it is subject to the New York Convention as codified in 9 U.S.C. §§ 201-08.  Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys 'R' Us, Inc., 126 F.3d 15, 19 (2d Cir. 1997) (internal quotations omitted).  Where an arbitration is conducted in the United States, "the domestic provisions of the FAA also apply, as is permitted by Articles V(1)(e) and V(2) of the New York Convention."  Scandinavian Reins. Co. Ltd. v. St. Paul

Marine & Fire Ins. Co., 668 F.3d 60, 71 (2d Cir. 2012); see also Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC, 450 F.3d 100, 102 n.1 (2d Cir. 2006) ("[T]he FAA and the New York Convention work in tandem, and they have 'overlapping coverage' to the extent that they do not conflict.")  Under Chapter 2 of the FAA, which implements the United States' obligations under the New York Convention, actions or proceedings that fall under the New York Convention include "arbitration agreement[s] or arbitral award[s] arising out of a legal relationship, whether contractual or not, which is considered as commercial."  CBF Indústria de Gusa S/A v. AMCI Holdings, Inc., 850 F.3d 58, 71 (2d Cir. 2017) (quoting 9 U.S.C. § 202).

PRH and BMPAD are entities organized under the laws of Haiti and have their principal places of business in Haiti, which is also a party to the New York Convention.  The arbitration between PRH and BMPAD occurred in the United States, specifically in New York as directed by the contracts at issue, contracts which created a legal and commercial relationship between PRH and BMPAD.  Furthermore, the Partial Final Award here is "not considered domestic," because the arbitration "involv[ed] parties domiciled or having their principal place of business [in Haiti,] outside the enforcing jurisdiction" of the United States.  Bergesen v. Joseph Muller Corp., 710 F.2d 928, 932 (2d Cir. 1983).  Accordingly, the Court will apply the New York Convention, its implementing legislation, 9 U.S.C. § 201 et seq., and the domestic provisions of the FAA, to the extent not in conflict with the Convention.  This Court has subject matter jurisdiction over the petition pursuant to Section 203 of Title 9 and BMPAD's arguments to the contrary are rejected.[3]  (BMPAD Br. at 16-21.)

II.    PRH's Petition to Confirm the Partial Final Award

A petition to confirm an arbitration award should be "treated as akin to a motion

---

[3] The implementing legislation grants original jurisdiction to a district court, regardless of the amount in controversy, for actions and proceedings brought under the New York Convention.  9 U.S.C. § 203.

for summary judgment based on the movant's submissions." D.H. Blair & Co., Inc. v.

Gottdiener, 462 F.3d 95, 110 (2d Cir. 2006). Summary judgment is appropriate where the record

reveals that there is "no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law." Rule 56(a), Fed. R. Civ. P.; see also McElwee v. Cnty. Of Orange,

700 F.3d 635, 640 (2d Cir. 2012). "Normally, confirmation of an arbitration award is a summary

proceeding that merely makes what is already a final arbitration award a judgment of the court,

and the court must grant the award unless the award is vacated, modified, or corrected." D.H.

Blair & Co., 462 F.3 at 110 (quotation marks omitted). "Only a barely colorable justification for

the outcome reached by the arbitrators is necessary to confirm the award." Id. (quotation marks

omitted).

In a case governed by the New York Convention, "[t]he court shall confirm the

award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of

the award specified in the said Convention." Scandinavian Reins. Co., 668 F.3d at 78. "[T]he

party opposing enforcement of an arbitral award has the burden to prove that one of the seven

defenses under the New York Convention applies. Art. V(1). The burden is a heavy one, as the

showing required to avoid summary confirmance is high." Zeiler v. Deitsch, 500 F.3d 157, 164

(2d Cir. 2007) (internal quotation marks and citation omitted). The New York Convention sets

out seven grounds for refusing to confirm an award—grounds relevant here are provided below:

> 1. Recognition and enforcement of the award may be refused, at
> the request of the party against whom it is invoked, only if that
> party furnishes to the competent authority where the recognition
> and enforcement is sought, proof that:
>
> (a) The parties to the agreement referred to in article II were, under
> the law applicable to them, under some incapacity, or the said
> agreement is not valid under the law to which the parties have
> subjected it or, failing any indication thereon, under the law of the
> country where the award was made; or

(b) The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case; or . . .

(d) The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the country where the arbitration took place. . . .

2. Recognition and enforcement of an arbitral award may also be refused if the competent authority in the country where recognition and enforcement is sought finds that: . . .

(b) The recognition or enforcement of the award would be contrary to the public policy of that country.

New York Convention art. V.

Here, BMPAD argues that even if the New York Convention did apply, enforcement of the Partial Final Award would be precluded under the defenses of "illegality of agreement," "lack of due process in arbitration," an "improper arbitration panel," and "public policy."  (BMPAD Br. at 18 (quoting Schlumberger Tech. Corp. v. United States, 195 F.3d 216, 217 (5th Cir. 1999).)  BMPAD's arguments are unavailing.

A.      Arbitrability

BMPAD's assertion that the arbitration provision is illegal under Haitian law—because Haitian law allegedly precludes arbitration between a Haitian domestic entity and a Haitian governmental agency—goes to the arbitrability issue raised and decided in the New York state court proceeding.[4]  There, Justice Andrew Borrok of New York County's Commercial Division denied the petition to stay the parties' arbitration, concluding that the "petitioners

---

[4] Article II(3) of the New York Convention requires a Court of a contracting state to the New York Convention to refer the parties to arbitration upon a party's request "unless it finds that the said agreement is null and void, inoperative or incapable of being performed."

fail[ed] to establish that the arbitration provisions are illegal under Haitian law."  (Doc 29-1 (noting that "Article 973, which supersedes Article 956, provides that the prohibition on arbitration does not apply to ***international arbitration***") (emphasis in original).)[5]

"Under the doctrine of res judicata, or claim preclusion, '[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'"  EDP Med. Comput. Sys., Inc. v. United States, 480 F.3d 621, 624 (2d Cir. 2007).  "Thus, the doctrine bars 'later litigation if [an] earlier decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action."  Id.  Justice Borrock's decision from September 27, 2021 is a final judgment on the merits by a court of competent jurisdiction in a case involving the same parties and cause of action as the instant case.  (Doc 29-1.)  The Appellate Division, First Department, may affirm or reverse Justice Borrok's order, but as the issue stands before this Court, the doctrine of res judicata applies against BMPAD. See Town of Poughkeepsie v. Espie, 02 Civ. 6995 (CLB), 2006 WL 236787, at *2 (S.D.N.Y. Jan. 27, 2006) ("[T]he pendency of an appeal does not detract from the preclusive nature of the judgment appealed from, when relied on in collateral proceedings."); Brown v. Mfrs. Hanover Tr. Co., 602 F. Supp. 549, 551 (S.D.N.Y. 1984) ("[P]endency of an appeal does not alter the res judicata effect of the challenged judgment.").

Accordingly, BMPAD may not relitigate the issue of arbitrability here, nor can it defend against enforcement under the New York Convention premised upon a claim of an illegal or invalid arbitration agreement.

---

[5] BMPAD appealed the decision, and on December 7, 2021, a full panel of the Appellate Division, First Department, vacated an interim stay on the enforcement of Justice Borrok's order pending the hearing and determination of BMPAD's appeal.  (Doc 34-1.)

B.       Notice and Due Process

BMPAD also argues that "there has been a lack of due process in the arbitration, given that PRH served defective notice of the arbitration and then leveraged that lack of notice to choose all three arbitrators."  (BMPAD Br. at 19.)  Specifically, BMPAD alleges that the notice was defective because it "was not properly served on BMPAD because Haiti is not a signatory to . . . the Hague Service Convention, so formal service requires letters rogatory as defined by 22 CFR § 92.54,"[6] and because PRH attempted to initiate the arbitration by serving notice in English, rather than French—the language of the contract, the parties, and the applicable law." (BMPAD Br. at 6.)  The Court interprets this argument as invoking Article V(1)(b) of the New York Convention, which provides for refusal of enforcement if "[t]he party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case."  New York Convention art. V(1)(b).  As part of this issue, the Court also considers BMPAD's argument that "PRH and its arbitrators held a purported security hearing in the middle of a COVID-19 surge in Haiti, less than three weeks after the assassination of Haiti's President, and despite BMPAD's reasonable request that any hearing be stayed until . . . BMPAD's counsel could communicate with its client and witnesses."  (BMPAD Br. at 3.)

First, as to the language of the notice, PRH responds that in addition to the request for arbitration sent in English on November 20, 2020 (Doc 20-1), PRH also provided BMPAD with notice of an intent to arbitrate the dispute in both English and French on November 4, 2020. (PRH Reply Br. at 1 (citing Doc 25-1).).  Furthermore, PRH notes that French was not the

---

[6] "In its broader sense in international practice, the term *letters rogatory* denotes a formal request from a court in which an action is pending, to a foreign court to perform some judicial act.  Examples are requests for the taking of evidence, the serving of a summons, subpoena, or other legal notice, or the execution of a civil judgment."  22 CFR § 92.54.

exclusive language of the contracts—the amendment to the contract was written in English—and BMPAD chose New York as the seat of arbitration for any disputes arising under the contracts. Even putting aside the fact that a petition to confirm an arbitration award is "treated as akin to a motion for summary judgment based on the movant's submissions."  D.H. Blair & Co., 462 F.3d at 110, the record supports PRH's claim that they provided sufficient notice as to the language of the notice.  The French version of the November 4, 2020 letter, with a BMPAD receipt stamp for the same day, notes that "[c]ette lettre constitue une notification officielle de notre intention d'entamer l'arbitrage à New York sur une base accélérée," presumably meaning "[t]his letter constitutes an official notice of our intention to commence the arbitration in New York on an expedited basis," as written in the English version of the letter.  (See Doc 25-1.)

PRH does not appear to specifically respond to BMPAD's other argument that for BMPAD, "because Haiti is not a signatory to the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, more commonly known as the Hague Service Convention, [] formal service requires letters rogatory as defined by 22 CFR § 92.54."  (BMPAD Br. at 5-6.)  But for the same reasons as res judicata applies to the arbitrability issue, BMPAD may not relitigate the propriety of service here—Justice Borrock's ruling appears to resolve the issue of whether service was proper, noting that "[i]nasmuch as the agreements contained an alternate method for service of the demand for arbitration, service under the Hague Convention was not required."  (Doc 29-1 at 2.)  Because the issue of whether service by letter rogatory instead was required "could have been raised" in the state proceeding as part of determining whether notice was proper, EDP Med. Comput. Sys., Inc., 480 F.3d at 624, Justice Borrok's ruling precludes relitigation over proper service before this Court.

BMPAD also alleges that it "was otherwise unable to present [its] case," New

York Convention art. V(1)(b), noting that "PRH and its arbitrators held a purported security hearing in the middle of a COVID-19 surge in Haiti, less than three weeks after the assassination of Haiti's President, and despite BMPAD's reasonable request that any hearing be stayed until . . . BMPAD's counsel could communicate with its client and witnesses." (BMPAD Br. at 3.) While the COVID-19 surge in Haiti and the political turmoil surrounding the assassination of Haiti's president are certainly significant and relevant factors to consider, based on the available record, the Court concludes that in the context of confirming an arbitration award under the New York Convention, BMPAD did have an opportunity to present its case at the arbitration hearing conducted in New York, but it declined to do so.

For example, shortly after finding out that Mr. Saint-Fleur, BMPAD's director and principal witness, had contracted COVID-19, the panel adjourned the scheduled hearing. (Partial Final Award ¶ 19.) And while the panel, following Mr. Saint-Fleur's recovery, refused to adjourn the conference for 60 days despite the assassination of the Haitian president, the Court concludes that this refusal did not deprive BMPAD of the ability to present its case before the panel because the record indicates that it was Mr. Saint-Fleur who was directing BMPAD's response efforts in this dispute, not the assassinated president. Furthermore, the panel repeatedly suggested to BMPAD that it participate in the arbitration hearing while preserving any rights it may have, such as litigating the arbitrability of the dispute, as it has done so in the state proceeding. (Id. ¶¶ 32-34.) The panel also only canceled the second day of the hearing on the very day of the hearing once it was clear that BMPAD would not attend—even after BMPAD had already failed to attend the first day of the hearing. (Id. ¶¶ 35-36.)

Accordingly, the Court concludes that BMPAD has failed to establish a defense under the New York Convention that it was "not given proper notice of the appointment of the

arbitrator or of the arbitration proceedings or was otherwise unable to present [its] case."  New York Convention art. V(1)(b).

        C.      Arbitration Panel Composition

BMPAD also alleges that "there is an improper arbitration panel here" because "there is unquestionably the appearance of a conflict of interest when two of the arbitrators are former partners of PRH's counsel at Blank Rome LLP, and the other arbitrator is directly associated with PRH's counsel via membership in an organization together."  (BMPAD Br. at 19.)

To establish a defense, the New York Convention specifically requires a showing that the "composition of the panel . . . was not in accordance with the agreement of the parties." New York Convention art. V(1)(d).  Based on the Court's review, the arbitration panel was chosen according to the contractual provisions agreed to by the parties: (1) PRH provided a request for arbitration on November 20, 2020, specifying the first arbitrator; (2) BMPAD "fail[ed] to appoint an arbitrator within the applicable 10-day period," at which point PRH as the initiating party was also "entitled to appoint [the] second arbitrator"; and (3) PRH's two appointed arbitrators then appointed the third arbitrator on the panel per the arbitration provisions of the contracts.  (Partial Final Award ¶¶ 4-5; Leconte Aff. ¶ 6.)  This is the relevant inquiry as to the arbitration panel composition under the New York Convention, and BMPAD fails to make out a case for invoking it in its defense here.

The carefully chosen words of the New York Convention merely require that the arbitrators be selected in accordance with the terms of the arbitration agreement and these arbitrators were so selected.  But even if this Court were to more generously consider bias of an

arbitrator as a ground for non-enforcement,[7] the outcome would be no different.  The sum total of BMPAD's evidentiary showing of purported bias consists of the following from the declaration of BMPAD's outside counsel:  ". . . PRH selected a panel of three arbitrators, one of whom was formerly a partner at the law firm of PRH's counsel and another of whom apparently shares membership with PRH's counsel in a small association. The third arbitrator apparently did not participate in the drafting of PRH's purported arbitral award."  (Doc 20 (McDonald Decl.) ¶ 3.)  First, the parties' contracts allowed each side to designate one arbitrator and the two selected arbitrators to select the third and final arbitrator.  The reason that PRH selected two of the arbitrators was because it was the designated default selection method in the parties' agreement.  The 31-page award reflects that it was signed by all three arbitrators, including the one who BMPAD claims "did not participate in the drafting of" the Partial Final Award.  Second, the contracts explicitly contemplated what types of affiliation would be impermissible for proposed arbitrators, specifically that "[n]o arbitrator shall be an employee, representative or agent of a Party."  (Leconte Aff. ¶ 6.)  The parties could have written a more sweeping provision addressing conflicts of interest, but they did not.  Third, while BMPAD disagrees with the procedural rulings of the panel and its Partial Final Award, there has been no showing of evident partiality by the panel.  Finally, there is nothing untoward raised by the vaguely worded claim that at some unknown point in time one arbitrator was "formerly a partner at the law firm of PRH's Counsel. . . ."[8]  Nor is there anything necessarily sinister that one or more arbitrators

---

[7] See UNCITRAL Guide to the New York Convention (2016) at 197 acknowledging that one article has suggested that arbitrator bias may be a ground for non-enforcement under either Article V(1)(d) or V(2)(b) of the Convention.
[8] In his pre-hearing disclosure statement, one of the two PRH-designated arbitrators stated that "I have no, and have had no, attorney-client relationship with Blank Rome, either directly or through any business with which I am affiliated.  I know a number of lawyers at Blank Rome.  Some of them were my colleagues at Healy & Baillie, a maritime law firm in New York, from 1980 until 2000, that merged into Blank Rome, some eight or so years after I left Healy & Baillie and the private practice of law."  (Doc 25-7 at 4-5 of 6.)  The other arbitrator disclosed that "[f]rom 1984 to 2006, I was an associate and then partner at Healy & Baillie LLP ("HB") and from 2006 to 2009 a partner in the law firm of Blank Rome ("BR") in New York."  (Doc 25-7 at 6 of 6.)  All three arbitrators are

"apparently shares membership with PRH's counsel in a small association" that is unnamed. None of these circumstances have been demonstrated to be evident partiality or corruption on the part of the arbitrators.  See, e.g., Scandinavian Reins. Co., 668 F.3d at 72.[9]

Accordingly, BMPAD has not shown that the composition of the arbitration panel was not in accordance with the parties' agreements, or any other reason relating to the panel for not enforcing the award.

D.    Public Policy Exception

Finally, BMPAD argues under the public policy exception in Article V(2)(b) of the New York Convention that "[e]nforcement of PRH's improperly procured arbitration award against a longstanding U.S. ally is contrary to the public policy of the United States."  (BMPAD Br. at 19.)

It is the law of this Circuit that the public policy exception in Article V(2)(b) "must be 'construed very narrowly' to encompass only those circumstances 'where enforcement would violate our most basic notions of morality and justice."  Telenor Mobile Commc'ns. AS v. Storm LLC, 584 F.3d 396, 411 (2d Cir. 2009).  Based on the foregoing, the Court concludes that enforcement of the Partial Final Award here would not violate our most basic notions of morality and justice, and that enforcement would actually further our country's "strong public policy in favor of international arbitration."  Id. at 405.

CONCLUSION

The Court has considered all the arguments of the parties, whether or not they are

---

members of the Society of Maritime Arbitrators, apparently the "small association" to which BMPAD refers.  (Doc 25-7 at 5 of 6.)
[9] "[A] court applying the New York Convention may vacate an arbitration award based on the grounds provided in the FAA."  KT Corp. v ABS Holdings, Ltd., 784 Fed. App'x 21, 24 (2d Cir. 2019 (citing Scandinavian Reins. Co., 668 F.3d at 70).  Notably, BMPAD did not move to vacate under section 10(a)(2) of the FAA.

expressly referenced here.  The petition to recognize, confirm, and enforce the Partial Final

Award of August 6, 2021 is granted as against BMPAD.  The Clerk of the Court is respectfully

directed to amend the caption (<u>see</u> footnote 1), enter final judgment for PRH as against BMPAD,

terminate the motion (Doc 4) and close the case.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated:  New York, New York
          January 26, 2022