UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
PREBLE-RISH HAITI, S.A.,

                         Petitioner,                          22-cv-7503 (PKC)
                                                              21-cv-6704 (PKC)
            -against-

                                                      OPINION AND ORDER


REPUBLIC OF HAITI, BUREAU DE
MONÉTISATION DES PROGRAMMES D'AIDE
AU DÉVELOPPEMENT,

                         Respondents.
-------------------------------------------------------------x

CASTEL, U.S.D.J.

            Before this Court is a petition by Preble-Rish Haiti, S.A. ("PRH") to recognize,

confirm, and enforce a Final Award of an international arbitration panel in its favor against the

respondents Republic of Haiti ("ROH") and the Bureau de Monétisation des Programmes d'Aide

au Développement ("BMPAD"), a Haitian governmental agency.  ROH opposes the petition and

has filed a cross-motion to dismiss the petition, or in the alternative, to vacate the arbitration

award.[1]  ROH argues that it is not a party or signatory to the underlying arbitration agreements

and that accordingly (1) the Court lacks subject-matter jurisdiction to decide the case because no

exception to the Foreign Sovereign Immunities Act ("FSIA") applies, and (2) even if the Court

has jurisdiction, the dispute was not arbitrable against ROH as a non-signatory.  ROH also

argues the Court lacks personal jurisdiction over it because PRH has not followed the proper

FSIA service procedures.

---

[1] BMPAD has not appeared in the action on this petition.

This dispute has spread across multiple forums, and as a result, several of ROH's arguments are precluded.  For the reasons discussed below, PRH's petition will be granted, and the cross-motion denied.

Additionally, ROH's related motion from relief from judgment, or alternately to amend the judgment, on Docket 21-cv-6704 (PKC), appears to be moot.  The parties will have 14 days from the date of this Order to show cause why the motion is not moot.

Familiarity with the filings and the Court's orders in these matters (22-cv-7503 (PKC) and 21-cv-6704 (PKC)) and the related matters (21-cv-4960 (PKC) and 21-cv-9040 (PKC)) is assumed.

BACKGROUND

I.      Fuel Contracts.

PRH is a company organized under the laws of Haiti with a principal place of business in Pétion-Ville, Haiti.  (ECF 1 ("Petition") at 3.)[2]  PRH provides infrastructure-project management and material supply, and as related to the at-issue claims against respondents, also acted as a marine transportation fuel supplier and importer of record.  (Id. at 3–4.)  Respondents are foreign entities organized under the laws of Haiti with a principal place of business in Port-au-Prince, Haiti.  (Id. at 4.)

BMPAD, an agency of the government of Haiti, is the only institution authorized to order petroleum products to make them available for consumption throughout the country. (Doc 6-1 (Corrected Final Award) ("Final Award") ¶ 70.)  On May 13, 2020, PRH and BMPAD entered into three contracts (the "Contracts") whereby PRH agreed to source, ship, and deliver fuel for a fee.  (21-cv-4960 (PKC), ECF 60 (the "Sept. 2021 Order") at 2; Petition at 4.)

_____

[2] Unless otherwise indicated, ECF citations refer to 22-cv-7503 (PKC).

Specifically, PRH agreed to make six monthly shipments of certain fuels, based on the total

monthly quantity requested by BMPAD.  (Sept. 2021 Order at 2.)  The first four fuel orders

proceeded uneventfully, but BMPAD allegedly fell behind on payments on the fifth order.  (Id.)

Though payment had yet to be received, PRH continued with the sourcing and shipping process,

sending reminders to BMPAD as the invoices became due and ships were loaded with BMPAD's

fuel.  (Id.)  BMPAD acknowledged receipt of shipping documents for the Haiti-bound ships

carrying the unpaid fuel and took possession of the fuel as the ships arrived in Haiti.  However,

payment was never sent to PRH.  Eventually, PRH halted all fuel shipments to BMPAD and now

alleges that BMPAD and ROH owe damages stemming from the unpaid invoices for fuel

delivered, including lost profits.  (Id.)

II.      Initial Arbitration Proceedings.

The three contracts at issue contained the following identical arbitration clause:

**Article 20.  ARBITRATION AND LEGISLATION**

In the event of a dispute between the Buyer and Seller under this
Contract, the dispute shall be submitted by either party to
arbitration in New York before three arbitrators.  The Party
initiating the arbitration shall provide written notice of its intention
to submit the matter to arbitration. . . . The decision of the
arbitrators shall be final, conclusive and binding on all Parties.
Judgment upon such award may be entered in any court of
competent jurisdiction. . . .

(Final Award ¶ 4.)  Pursuant to these arbitration clauses, PRH served a notice demanding

arbitration of its claims against ROH and BMPAD on November 20, 2020.  (Petition at 11; Sept.

2021 Order at 2; Final Award ¶ 1.)  The Notice began:

We are attorneys representing Preble-Rish Haiti SA ("PRH") who
demand arbitration against the Republic of Haiti, by and through
its agent Bureau de Monétisation de Programmes d'Aide au
Développement" (BMPAD) (collectively referred to as
"BMPAD") for disputes arising from BMPAD's breach of the

3

three referenced contracts, copies of which are attached hereto (the
"Contracts").

(Final Award ¶ 2.)  The Notice was sent to (1) the email address specified in the Contracts,

which belonged to Fils Aimé Ignace Saint-Fleur, the Director General of BMPAD, (2) other

BMPAD officials, and (3) Michel Patrick Boisvert, the Minister of Economy and Finance of the

Republic of Haiti.  (Id. ¶ 3.)

The arbitration notice identified Robert G. Shaw as PRH's appointed arbitrator,

called upon BMPAD to appoint its own arbitrator, and indicated that if "BMPAD fails to appoint

an arbitrator within 10 days, PRH will select an arbitrator on [BMPAD's] behalf.  Both

arbitrators will then appoint a third arbitrator."  (Id. ¶ 5.)  BMPAD did not appoint the second

arbitrator by the required deadline of November 30, 2020, and PRH appointed LeRoy Lambert.

(Id. ¶ 6.)  On December 1, 2020, Mr. Shaw and Mr. Lambert appointed Louis Epstein as the third

and final arbitrator on the panel, and Mr. Epstein notified the parties of his appointment.  (Id.)

On December 4, 2020, Dan Harris, a partner from the law firm Harris Bricken

Sliwoski LLP ("Harris Bricken"), wrote to the panel, stating, "We are counsel for the

Government of Haiti (GOH) and its Bureau de Monétisation de Programmes d'Aide au

Développement (BMPAD) and this letter is in response to the arbitration you purport to have

brought against BMPAD."  (Id. ¶ 7.)  The letter objected to the arbitration, demanded PRH

dismiss it, and stated that Harris Bricken would seek relief in court if the arbitration was not

dismissed.  (Id.)

On March 24, 2021, PRH submitted its Initial Claim Statement and Request for

an Interim Partial Award of Security to the arbitration panel.  (Petition at 12; Final Award ¶ 9.)

On March 27, 2021, Harris Bricken responded on behalf of ROH and BMPAD via e-mail, stating

that respondents did not recognize the panel's jurisdiction and had filed in state court a petition

for a stay and a motion for preliminary injunction and request for a temporary restraining order.

(Petition at 12–13; Final Award ¶ 10.)  Harris Bricken stated:

> ROH reserves all of its rights in connection with this purported
> arbitration, the New York action, and the lawsuit it will file in
> Haiti against PRH. Because ROH does not waive or intend to
> jeopardize its position of non-arbitrability under CPLR 7503(b), it
> has no intention of filing a Statement of Defense or posting a bond
> in this action.

(Final Award ¶ 10.)  As discussed in the following section, the petition for a stay was denied.

On April 5, 2021, in the absence of injunctive relief from state court, the panel

ruled that the arbitration would proceed.  (Id. ¶¶ 11–13.)  On August 6, 2021, the arbitration

panel issued a Partial Final Award granting PRH's petition for a pre-award security and directing

BMPAD to deposit $23,043,429.79 into an escrow account.  (Id. ¶ 40.)  On January 26, 2022,

this Court issued an Opinion and Order confirming the Partial Final Award, and the Clerk of

Court entered a judgment against BMPAD.  (21-cv-6704 (PKC), ECF 48, 49.)  On February 1,

2022, the Court issued an order clarifying that as used in the January 26 Opinion, "BMPAD" was

inclusive of both BMPAD and ROH, and on the Court's direction the Clerk amended the

judgment accordingly.  (21-cv-6704 (PKC), ECF 53, 56.)

III.    State Court Proceedings.

On December 22, 2020, a petition was filed in the Supreme Court of New York,

County of New York, by "Petitioners, REPUBLIC OF HAITI ('ROH'), BUREAU DE

MONÉTISATION DE PROGRAMMES D'AIDE AU DÉVELOPPEMENT ('BMPAD')

(together, 'Petitioners'), by and through their attorneys, Harris Bricken Sliwoski LLP."  Republic

of Haiti et al. v. Preble Rish Haiti SA, Index No. 657237/2020, Doc. 1 (N.Y. Sup. Ct. Dec. 22,

2020).  (Final Award ¶ 8; ECF 38-1.)  The petition sought an order to stay the arbitration

pursuant to section 7503(b) of the N.Y. C.P.L.R.  The petition did not dispute that the parties had

entered into an agreement containing an arbitration clause but instead argued that the arbitration

demand was procedurally defective and that the arbitration clauses were invalid under Haitian

law.  (Final Award ¶ 11.)

On September 27, 2021, Justice Andrew Borrok of New York County's

Commercial Division denied the petition to stay the arbitration, concluding that the "petitioners

fail[ed] to establish that the arbitration provisions are illegal under Haitian law."  Republic of

Haiti et al., Index No. 657237/2020, Doc. 68 (N.Y. Sup. Ct. Sept. 27, 2021).  (21-cv-6704

(PKC), ECF 29-1.)  ROH and BMPAD appealed the decision, and on December 7, 2021, a full

panel of the Appellate Division, First Department, vacated an interim stay on the enforcement of

Justice Borrok's order pending the hearing and determination of the appeal.  (21-cv-6704 (PKC),

ECF 34.)  On April 12, 2022, the Appellate Division affirmed Justice Borrok's decision denying

the petition to stay arbitration and granting the cross-motion to compel arbitration.  Republic of

Haiti v. Preble Rish Haiti SA, 204 A.D.3d 482 (1st Dep't 2022).  (21-cv-6704 (PKC), ECF 84.)

IV.    Arbitration Hearing and Final Award.

On February 7, 2022, the final hearing on the merits was held by videoconference.

(Petition at 17.)  PRH submitted a pre-hearing statement, but respondents did not.  (Id.)  PRH

presented three witnesses, and counsel for respondents cross-examined all three.  (Id.)  After

closing arguments, the hearing was adjourned, and post-hearing submissions were sent to the

panel on February 23, 2022.  (Id.)

Also on February 23, 2022, the panel received a letter from Elizabeth Wolstein of

Schlam Stone & Dolan LLP.  The letter stated that her firm, as well as the Madsen Law Firm,

had been retained to represent ROH in connection with the arbitration.  (Final Award ¶ 62.)  The

letter asserted that ROH was not a party to the Contracts, had not signed the arbitration

agreement, and asked the panel to clarify that the "Partial Final Award did not run against the ROH and that ROH was not a respondent in this arbitration." (Id.)  After receiving additional submissions from both PRH and ROH, the panel declined to reopen the Partial Final Award and determined that it would address the issues raised in the letter in its final award.  (Id. ¶¶ 64–66.)

On August 23, 2022, the panel issued the Final Award and found that PRH is entitled to recover $28,184,756.65 from respondents.  (Petition at 18; Final Award at p. 75.) Among other issues, the panel rejected the argument made on behalf of ROH that it was not bound by the Contracts and the arbitration agreement—the panel determined that (1) ROH had waived this defense when it failed to assert it in the petition to stay arbitration that it brought in New York Supreme Court, that (2) ROH was bound by its conduct and appearance in the New York arbitration, that (3) BMPAD was the alter ego for ROH, and that (4) at all relevant times, BMPAD acted as agent for ROH.  (Petition at 18–19; Final Award ¶¶ 41–51.)

PRH filed a petition to this Court pursuant to the New York Convention and the Federal Arbitration Act ("FAA"), seeking an order recognizing, confirming, and enforcing the Final Award against respondents jointly and severally.  (Petition at 1–2.)  ROH opposes the petition, and has moved to either dismiss the petition or, in the alternative, to vacate the Final Award.  (ECF 33.)

V.     Service Attempts.

PRH asserts it has served both respondents by multiple means.  The Contracts provide that "[a]ll correspondence between the Parties subject to this Contract shall be addressed to" Mr. Ignace Fils Aimé Saint Fleur, the Executive Director of BMPAD, with communications "deemed to have been received . . . if sent by email."  (ECF 31-1 at 16, 31-3 at 16, 31-5 at 15.)

7

A few days after filing the instant petition, counsel for PRH provided to Mr. Saint Fleur—at the email address listed in the Contracts—copies of the following documents:

    (1)    Petition to Confirm Final Award (in English)

    (2)    Summons to BMPAD (in English)

    (3)    Summons to ROH (in English)

    (4)    Notice of Suit (in English)

    (5)    Petition to Confirm Final Award (in French)

    (6)    Summons to BMPAD (in French)

    (7)    Summons to ROH (in French)

    (8)    Notice of Suit (in French)

(ECF 38-12.)  The email itself was sent in both English and French.  (Id.)

On September 12, 2022, upon request from PRH, the Clerk of Court issued a summons to respondents at the following addresses: (1) "REPUBLIC OF HAITI c/o Foreign Minister Jean Victor Geneus, 5A, Delmas 60, Musseau, Port-au-Prince," (2) "BUREAU DE MONÉTISATION DES PROGRAMMES D'AIDE AU DÉVELOPPEMENT, No.12 Boulevard Harry Truman, Port-au-Prince, Haiti," and (3) "BUREAU DE MONÉTISATION DES PROGRAMMES D'AIDE AU DÉVELOPPEMENT, c/o The Consulate General of Haiti in New York 815 2nd Ave 6th floor, New York, NY 10017."  (ECF 14, 15, 16.)  A week later, the Clerk mailed by FedEx copies of the following documents to each of the three addresses:

    (1)    A copy of the Notice and Summons (in English and French)

    (2)    PRH's Petition to Confirm (in English and French)

    (3)    The Final Award

    (4)    This Court's Order to Show Cause why the petition should not be confirmed  (ECF 10.)

    (5)    A certificate of accuracy for the French translations

(ECF 19, 20, 21.)  FedEx later reported that the package sent to ROH in Haiti "could not be located" after becoming "stuck" in Haitian customs.  (ECF 38-13.)

On October 14, 2022, the Clerk mailed an additional service package to ROH at the following address: "Haitian Foreign Minister Jean Victor Geneus, Ministere des Affaires Etrangeres et des Cultes de la Republique d'Haiti Jean Victor Geneus, 5A Delmas 60, Musseau, Port-au-Prince, Haiti."  (ECF 37.)  On October 19, 2022, PRH learned that this package was being held in Miami because FedEx had suspended service in Haiti due to ongoing civil unrest. (ECF 38-14 at 2.)  On October 20, 2022, PRH requested that the Clerk, pursuant to 28 U.S.C. § 1608(a)(4), dispatch copies of the service package to the Secretary of State to be served upon ROH through diplomatic channels.  (Id.)  On November 1, 2022, PRH filed an affidavit of service for the October 14 summons to ROH, which included an attached FedEx proof-of-delivery showing that it was signed for by a "M.THEODORE" and a delivery date of October 28, 2022.  (ECF 41.)

DISCUSSION

I.      Applicable Law.

"An application to confirm a foreign arbitral award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court."  Commodities & Mins. Enter. Ltd. v. CVG Ferrominera Orinoco, C.A., 49 F.4th 802, 809 (2d Cir. 2022) (quotation marks omitted), cert. denied, 143 S. Ct. 786 (2023).  "The review of arbitration awards is very limited in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation."  Id. (ellipsis and quotation marks omitted).  "That review is 'extremely deferential' to the findings of the

arbitration panel." Id. (quoting Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC, 497 F.3d 133, 139 (2d Cir. 2007).

Where an arbitration "involve[s] parties domiciled or having their principal place of business [outside of the United States,]" it is subject to the New York Convention as codified in 9 U.S.C. §§ 201–08. Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys 'R' Us, Inc., 126 F.3d 15, 19 (2d Cir. 1997) (quotation marks omitted). Where an arbitration is conducted in the United States, "the domestic provisions of the FAA also apply, as is permitted by Articles V(1)(e) and V(2) of the New York Convention." Scandinavian Reins. Co. Ltd. v. St. Paul Marine & Fire Ins. Co., 668 F.3d 60, 71 (2d Cir. 2012); see also Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC, 450 F.3d 100, 102 n.1 (2d Cir. 2006) ("[T]he FAA and the New York Convention work in tandem, and they have 'overlapping coverage' to the extent that they do not conflict."). Under Chapter 2 of the FAA, which implements the United States' obligations under the New York Convention, actions or proceedings that fall under the New York Convention include "arbitration agreement[s] or arbitral award[s] arising out of a legal relationship, whether contractual or not, which is considered as commercial." CBF Indústria de Gusa S/A v. AMCI Holdings, Inc., 850 F.3d 58, 71 (2d Cir. 2017) (quoting 9 U.S.C. § 202).

PRH, BMPAD, and ROH are entities organized under the laws of Haiti and have their principal places of business in Haiti, which is also a party to the New York Convention. The arbitration between PRH and respondents occurred in the United States, specifically in New York, as directed by the Contracts, contracts which created a legal and commercial relationship between PRH and respondents. Furthermore, the Final Award here is "not considered domestic," because the arbitration "involv[ed] parties domiciled or having their principal place of business [in Haiti,] outside the enforcing jurisdiction" of the United States. Bergesen v. Joseph Muller

10

Corp., 710 F.2d 928, 932 (2d Cir. 1983).  Accordingly, the Court will apply the New York

Convention, its implementing legislation, 9 U.S.C. § 201 et seq., and the domestic provisions of

the FAA, to the extent not in conflict with the Convention.

The Court will address the jurisdictional challenges raised by ROH before

proceeding to the merits.

II.     The Court has Subject-Matter Jurisdiction Over the Action Against ROH.

The FSIA is "the sole basis for obtaining jurisdiction over a foreign state."

Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428, 434 (1989).  Under the

FSIA, federal district courts have original jurisdiction of:

> [A]ny nonjury civil action against a foreign state as defined in
> section 1603(a) of this title as to any claim for relief in personam
> with respect to which the foreign state is not entitled to immunity
> either under sections 1605-1607 of this title or under any
> applicable international agreement.

28 U.S.C. § 1330(a).  Section 1604 of Title 28 in turn provides that a "foreign state shall be

immune from the jurisdiction of the courts of the United States . . . except as provided in sections

1605 to 1607 of this chapter."  Id. § 1604.  "Sections 1604 and 1330(a) work in tandem: § 1604

bars federal and state courts from exercising jurisdiction when a foreign state is entitled to

immunity, and § 1330(a) confers jurisdiction on district courts to hear suits brought by United

States citizens and by aliens when a foreign state is not entitled to immunity."  Argentine

Republic, 488 U.S. at 434.  "[T]he FSIA 'must be applied by the district courts in every action

against a foreign sovereign, since subject-matter jurisdiction in any such action depends on the

existence of one of the specified exceptions to foreign sovereign immunity.'"  Id. at 434–35

(quoting Verlinden B.V. v. Central Bank of Nigeria, 461 U.S. 480, 493 (1983)).

The FSIA defines a "foreign state" to include "a political subdivision of a foreign state or an agency or instrumentality of a foreign state."  28 U.S.C. § 1603(a); see Turkiye Halk Bankasi A.S. v. United States, 143 S. Ct. 940, 946 (2023).  Section 1603 further provides that:

> (b) An "agency or instrumentality of a foreign state" means any entity—
>
> > (1) which is a separate legal person, corporate or otherwise, and
> >
> > (2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and . . .

28 U.S.C. § 1603(b).  Both ROH and its agency BMPAD fall within the FSIA's definition of "foreign state," and accordingly for this Court to have subject-matter jurisdiction over this action one of the immunity exceptions in sections 1605 through 1607 must apply.  See Turkiye Halk Bankasi A.S., 143 S. Ct. at 946 ("[T]he FSIA codifies a baseline principle of immunity for foreign states and their instrumentalities" and "then sets out exceptions to that principle."); Shapiro v. Republic of Bolivia, 930 F.2d 1013, 1017 (2d Cir. 1991) ("[U]nless one of the statutory exceptions applies, a federal court is without subject matter jurisdiction to hear the instant action.").

PRH urges that two exceptions in section 1605 apply here: the implied waiver exception, 28 U.S.C. § 1605(a)(1), and the arbitration exception, id. § 1605(a)(6).  Section 1605(a)(1) provides that:

> (a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case--
>
> > (1) in which the foreign state has waived its immunity either explicitly or by implication, notwithstanding any withdrawal of the waiver which the foreign state may

> purport to effect except in accordance with the terms of the
> waiver;

28 U.S.C. § 1605(a)(1).  "Federal courts have been virtually unanimous in holding that the

implied waiver provision of Section 1605(a)(1) must be construed narrowly."  Shapiro, 930 F.2d

at 1017.  The Second Circuit has identified certain "unmistakable" examples of waiver, such as

"where a foreign state has filed a responsive pleading in an action without raising the defense of

sovereign immunity."  Id. (quoting H.R.Rep. No. 1487, 94th Cong., 2d Sess. 18, reprinted in

1976 U.S. Code Cong. & Admin. News 6604, 6617).  Courts are "reluctant to find an implied

waiver where the circumstances were not similarly unambiguous."  Id.

As a general matter, courts do not find that a foreign state waives immunity

before a court in the United States "simply because a sovereign entered into a contract that

named a third country for arbitration or designated the laws of a third nation to govern the

interpretation of the contract."  Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co.,

Kommanditgesellschaft v. Navimpex Centrala Navala, 989 F.2d 572, 577 (2d Cir. 1993), as

amended (May 25, 1993).  But "when a country becomes a signatory to the [New York]

Convention, by the very provisions of the Convention, the signatory State must have

contemplated enforcement actions in other signatory States."  Id. at 578.  The Second Circuit in

Seetransport concluded that where (1) a foreign state was a signatory to the New York

Convention, (2) the state—or an instrumentality or agency thereof—"entered into a contract . . .

that had a provision that any disputes would be submitted to arbitration," and then (3)

"participated in an arbitration in which an award was issued against it," the contracting entity had

waived any sovereign immunity defense and the district court would have subject-matter

jurisdiction.  Id. at 578–79; see Blue Ridge Invs., LLC v. Republic of Argentina, 902 F. Supp. 2d

367, 373 (S.D.N.Y. 2012) ("Implied waiver is commonly found in cases involving the

enforcement of arbitration awards, however, so long as the award is rendered pursuant to a

convention to which the foreign state is a signatory, and the convention provides for recognition

and enforcement of the award in contracting states."), aff'd sub nom. Blue Ridge Invs., L.L.C. v.

Republic of Argentina, 735 F.3d 72 (2d Cir. 2013).

Section 1605(a)(6) codifies the so-called "arbitration exception," which denies

immunity in any case:

> [I]n which the action is brought, either to enforce an agreement
> made by the foreign state with or for the benefit of a private party
> to submit to arbitration all or any differences which have arisen or
> which may arise between the parties with respect to a defined legal
> relationship, whether contractual or not, concerning a subject
> matter capable of settlement by arbitration under the laws of the
> United States, or to confirm an award made pursuant to such an
> agreement to arbitrate, if
>
> > (A) the arbitration takes place or is intended to take place in
> > the United States,
> >
> > (B) the agreement or award is or may be governed by a
> > treaty or other international agreement in force for the
> > United States calling for the recognition and
> > enforcement of arbitral awards . . . .

28 U.S.C. § 1605(a)(6).  "The [New York] Convention, as implemented by chapter two of the

FAA, is exactly the kind of treaty which the arbitration exception contemplates."  Monegasque

de Reassurances S.A.M. (Monde Re) v. Nak Naftogaz of Ukraine, 158 F. Supp. 2d 377, 382

(S.D.N.Y. 2001), aff'd sub nom. In re Arb. between Monegasque De Reassurances S.A.M. v.

Nak Naftogaz of Ukraine, 311 F.3d 488 (2d Cir. 2002).  But for the "immunity exception to

apply here, the relevant arbitration agreement must have been 'made by'" the foreign state.

Gater Assets Ltd. v. AO Moldovagaz, 2 F.4th 42, 66 (2d Cir. 2021).

Applying the above principles, the Court has subject-matter jurisdiction over this

action with respect to BMPAD under both sections 1605(a)(1) and 1605(a)(6).  It is undisputed

that ROH is a signatory to the New York Convention.  (See ECF 33 at 15.)  The Contracts, to which BMPAD—an agency of ROH—is a party, expressly provide that disputes would be submitted to arbitration in New York.  No party disputes that BMPAD appeared in the arbitration.  Direct application of Seetransport instructs that BMPAD is not entitled to immunity.

The parties disagree, however, over the Court's jurisdiction as to ROH.  PRH asserts that ROH is likewise without immunity because ROH is also party to the Contracts, and the Final Award is against both BMPAD and ROH.  In opposition, ROH argues that it is "undisputed" that ROH was not a party to the Contracts, that it did not participate in the arbitration, and therefore neither the arbitration exception nor the implied waiver exception can provide subject-matter jurisdiction over an action against it.  (ECF 33 at 19; ECF 49 at 4.)  The Court agrees with PRH because ROH's arguments are barred by principles of res judicata.

"Under the doctrine of res judicata, or claim preclusion, '[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'"  EDP Med. Comput. Sys., Inc. v. United States, 480 F.3d 621, 624 (2d Cir. 2007).  "Thus, the doctrine bars 'later litigation if [an] earlier decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action."  Id.

The Full Faith and Credit Act requires that when determining the preclusive effect of state judgments, the courts "must accept the rules chosen by the State from which the judgment is taken."  Matsushita Elec. Indus. Co. v. Epstein, 516 U.S. 367, 373 (1996); 28 U.S.C. §1738.  A "threshold question[]" on a motion to stay or compel arbitration under N.Y. C.P.L.R. 7503 is "whether the parties made a valid agreement to arbitrate."  Rockland Cnty. v. Primiano Const. Co., 51 N.Y.2d 1, 6 (1980); see Morgan v. Nikko Sec. Co. Int'l, 691 F. Supp. 792, 796

(S.D.N.Y. 1988) ("The question whether an agreement to submit disputes to arbitration has been made is a legal one that the court must decide.") (citing Matarasso v. Cont'l Cas. Co., 56 N.Y.2d 264, 267 (1982)); David D. Siegel, N.Y. Prac. § 589 (6th ed. December 2022 update) ("The first [threshold question] is the obvious question of whether the dispute is arbitrable, which can embrace such constituent issues as whether a valid agreement to arbitrate was made and complied with or whether, if the arbitration clause is a narrow one, the particular dispute is within it.").

   A state court's treatment of this threshold issue is entitled to preclusive effect. Under section 7503, where a party has "moved to stay arbitration, and the stay ha[s] been denied," that party is "not . . . allowed to raise these questions in a proceeding to confirm an arbitral award in the [opposing party's] favor."  Morgan, 691 F. Supp. at 799 (collecting cases). The results of a motion to compel are similarly binding.  Where a party brings "a proceeding to compel arbitration . . . and prevails in it," the opposing party's "failure to participate in the arbitration is at his own risk" and that party "is foreclosed from later resisting the award based on the threshold questions: [the opposing party] is bound by the determination that the dispute was arbitrable."  Siegel, N.Y. Prac. § 592.

   ROH and BMPAD jointly brought a petition in New York Supreme Court to stay arbitration under section 7503(b).  The form UCS-840 "Request for Judicial Intervention" filed the same day as the petition lists ROH and BMPAD as separate parties, both as "Plaintiff/Petitioner."  Republic of Haiti et al., Index No. 657237/2020, Doc. 20 (N.Y. Sup. Ct. Dec. 12, 2020).  In support of the petition, a signed, sworn, and notarized verification from BMPAD's director was submitted, which began, "I am the Director of BUREAU DE MONÉTISATION DE PROGRAMMES D'AIDE AU DÉVELOPPEMENT (BMPAD), an

16

agency of REPUBLIC OF HAITI, which are both Petitioners in this action." <u>Republic of Haiti et al.</u>, Index No. 657237/2020, Doc. 43 (N.Y. Sup. Ct. Jan. 18, 2021).  (ECF 38-3.)  The petition itself stated "Petitioners REPUBLIC OF HAITI and BUREAU DE MONÉTISATION DE PROGRAMMES D'AIDE AU DÉVELOPPEMENT are Haitian entities located in the Republic of Haiti. <u>Petitioners have a contract for product with Respondent.</u>" <u>Republic of Haiti et al.</u>, Index No. 657237/2020, Doc. 1 ¶ 4 (N.Y. Sup. Ct. Dec. 20, 2020) (emphasis added).  (ECF 38-1)

On September 27, 2021, Justice Andrew Borrok denied the petition to stay the arbitration and granted PRH's cross-motion to compel arbitration. <u>Republic of Haiti et al.</u>, Index No. 657237/2020, Doc. 68 (N.Y. Sup. Ct. Sept. 27, 2021).  The Order denying the stay petition stated, "It is beyond dispute that the parties freely and unequivocally agreed to arbitrate all of their disputes in New York" and that "[t]he petitioners," ROH and BMPAD, "drafted the very agreements containing the arbitration clauses." <u>Id.</u>  The Appellate Division, First Department, affirmed Justice Borrok's Order on April 12, 2022. <u>Republic of Haiti</u>, 204 A.D.3d at 482.

Justice Borrok's decision is a final judgment on the merits by a court of competent jurisdiction in a case involving the same parties and underlying claim as the instant action.  ROH—as the party bringing the petition before Justice Borrok—is precluded from re-litigating issues that "were or could have been raised" in that proceeding.  As ROH brought a motion to stay—which was denied—and PRH brought a cross-motion to compel arbitration against ROH—which was granted—ROH cannot now deny that it had a valid arbitration agreement with PRH.[3]  As such, ROH is not entitled to FSIA immunity, and the Court has subject-matter jurisdiction over the action against it.

---

[3] ROH asserts that it should not be bound by Justice Borrok's Order because the firm that represented it in that action, Harris Bricken, "never had authority to claim it represented the Republic."  (ECF 33 at 4.)  While the Court notes the serious ethical implications of this suggestion, federal district courts do not sit in review of state court judgments, but instead—as noted above—must give those judgments the "full faith and credit . . . as they have by

III.    ROH was Properly Served, and the Court has Personal Jurisdiction over ROH.

ROH also moves to dismiss the petition for lack of proper service under Rule 12(b)(5), Fed. R. Civ. P., and lack of personal jurisdiction under Rule 12(b)(2).

The FSIA provides that personal jurisdiction exists over a foreign state where a court has subject-matter jurisdiction under section 1330(a) and where service has been made under section 1608.  28 U.S.C. § 1330(b); see Shapiro, 930 F.2d at 1020 ("Under the FSIA . . . personal jurisdiction equals subject matter jurisdiction plus valid service of process.").  In Commodities & Minerals Enterprise Ltd. v. CVG Ferrominera Orinoco, C.A., 49 F.4th 802 (2d Cir. 2022), the Second Circuit clarified how the FSIA and FAA service provisions function together in an action to confirm an arbitration award under the New York Convention against a foreign state.  Section 208 of the Convention's implementing legislation incorporates section 9 of the FAA, which specifies that "notice of the application" must be served "in like manner as other process of the court."  Id. at 811 (quoting 9 U.S.C. § 9).  Looking to the general service rules, Rule 4(j)(1), Fed. R. Civ. P., directs that "[a] foreign state or its political subdivision, agency, or instrumentality must be served in accordance with 28 U.S.C. § 1608."

Section 1608 directs service to be completed through "delivery of a copy of the summons and complaint" by a cascading series of options.  Commodities & Minerals Enterprise Ltd. explained, however, that "a summons is not required to properly effect service when seeking confirmation of a foreign arbitral award against a foreign instrumentality," reasoning that the FAA defines what documents are to be served (i.e., notice of the application), and that importing the requirement to serve a "summons and complaint" into the FAA makes little sense "because

_____

law or usage in the courts" of New York.  28 U.S.C. § 1738.  The Court must "give the same preclusive effect to a state-court judgment as another court of that State would give.'"  Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 293 (2005).  If ROH seeks to attack the state court judgment against it, the proper forum would be the courts of New York.  See id. at 284.

18

motions to confirm arbitral awards are not commenced by the filing of a complaint."  49 F.4th at

813.  In this context, section 1608 "answers <u>how</u> to serve process" by specifying "the 'manner'

in which notice of the application must be served."  <u>Id.</u>

      Section 1608(a)(1) provides that service "upon a foreign state or political

subdivision of a foreign state" shall be made "by delivery of a [notice of the application] in

accordance with any special arrangement for service between the plaintiff and the foreign state or

political subdivision."  Section 1608(b)(1) contains a parallel "special arrangement" provision

for service upon "an agency or instrumentality of a foreign state."  Sections 1608(a)(2)-(4) and

(b)(2)-(4) address alternate methods of service by means of international service conventions,

mail, or diplomatic channels.  The Court need not address whether service has been properly

made under these other provisions, as they only apply where "no special arrangement exists," 28

U.S.C. § 1608(a)(2), and here PRH has properly served both BMPAD and ROH under the

"special arrangement" provisions of section 1608(b)(1).

      Each of the fuel contracts, under "Article 24. NOTICE," include the following

provision:

      All correspondence between the Parties subject to this Contract
      shall be addressed to:

      **<u>For the Buyer:</u>**

      Attention:    Mr. Ignace Fils Aimé SAINT FLEUR

                  Executive Director of BMPAD

                  12, Boulevard Harry Truman, Port-au-Prince, HAITI

                  Bureau for the Monetization of Development

Assistance Programs (BMPAD)

(BMPAD) Tel.: 509 28130933/509 29408625

Email: ignace.saintfleur@bmpad.gouv.ht

. . .

Any notice or communication will be deemed to have been
received:

. . .

> c) if sent by e-mail upon delivery, in each case unless
> delivered on a non-business day or after 5:00 p.m. (local
> time at the Receiving Party's location) on a business day. If
> it is delivered on a non-business day or after 5:00 p.m. on a
> business day, it will be deemed to have been delivered on
> the next business day. Business day for these purposes
> means a calendar day other than a Saturday, Sunday or
> holiday in the country and region in which the Recipient
> has its principal place of business.

(See, e.g., ECF 31-1.)  These provisions covering "all correspondence" between the contracting

parties qualify as a "special arrangement for service" between PRH and respondents within the

meaning of section 1608(a)(1).  See Arb. Between Space Sys./Loral, Inc. v. Yuzhnoye Design

Off., 164 F. Supp. 2d 397, 402 (S.D.N.Y. 2001) (Koeltl, J.) ("Although service of process is not

specifically mentioned in § 26, it falls within the category of '[a]ll notices and communications

between the parties' in § 26.1. Thus, § 26 does establish a special arrangement for the service of

process under the FSIA.") (collecting cases).  On October 6, 2022, counsel for PRH directed to

both respondents at the email listed above—in both English and French—copies of its petition

and notice of suit.  (ECF 38-12.)

ROH's brief in support of its cross-motion argues that PRH's service was

insufficient because it failed to issue a timely summons.  (See, e.g., ECF 33 at 16 n.7.)  This

argument is foreclosed by the decision in Commodities & Minerals Enterprise Ltd.[4]  ROH's

remaining argument regarding section 1608(a)(1) is that ROH is not subject to the special

arrangement provisions of the Contracts because it is not a party to those contracts.  But as

discussed above, this argument is precluded by the judgment in the state court action.  Both

BMPAD and ROH have been properly served and the Court has personal jurisdiction over them.

 The Court proceeds to the merits of the petition to confirm the Final Award.

IV. PRH's Petition to Confirm the Final Award Will Be Granted.

 A petition to confirm an arbitration award should be "treated as akin to a motion

for summary judgment based on the movant's submissions."  D.H. Blair & Co., Inc. v.

Gottdiener, 462 F.3d 95, 110 (2d Cir. 2006).  Summary judgment is appropriate where the record

reveals that there is "no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law."  Rule 56(a), Fed. R. Civ. P.; see also McElwee v. Cnty. Of Orange,

700 F.3d 635, 640 (2d Cir. 2012).  "Normally, confirmation of an arbitration award is a summary

proceeding that merely makes what is already a final arbitration award a judgment of the court,

and the court must grant the award unless the award is vacated, modified, or corrected."  D.H.

Blair & Co., 462 F.3d at 110 (quotation marks omitted).  "Only a barely colorable justification

for the outcome reached by the arbitrators is necessary to confirm the award."  Id. (quotation

marks omitted).

 In a case governed by the New York Convention, "[t]he court shall confirm the

award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of

the award specified in the said Convention."  Scandinavian Reins. Co., 668 F.3d at 78.  "[T]he

party opposing enforcement of an arbitral award has the burden to prove that one of the seven

---

[4] ROH's brief was submitted the same day Commodities & Minerals Enterprise Ltd. was published.

defenses under the New York Convention applies. . . .  The burden is a heavy one, as the showing required to avoid summary confirmance is high." Zeiler v. Deitsch, 500 F.3d 157, 164 (2d Cir. 2007) (quotation marks omitted).  The Court previously determined that none of these defenses applied when confirming the Partial Final Award.  (21-cv-6704, ECF 48.)

The FAA provides limited grounds for vacating an arbitration award.  9 U.S.C. § 10(a).  Section 10(a)(4) of the FAA provides that the district court may vacate an award "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."  9 U.S.C. § 10(a)(4).  The Second Circuit has "consistently accorded the narrowest of readings to section 10(a)(4)." Jock v. Sterling Jewelers Inc., 646 F.3d 113, 122 (2d Cir. 2011) (quotation marks omitted). "Accordingly, an arbitrator may exceed her authority by, first, considering issues beyond those the parties have submitted for her consideration, or, second, reaching issues clearly prohibited by law or by the terms of the parties' agreement." Id.

BMPAD, insofar as it is an entity distinct from ROH, has not appeared or responded to the petition.  ROH does not claim to represent BMPAD in this action, and ROH's primary objections are explicitly premised on the separability of the two respondents.  "[A] district court should treat an unanswered . . . petition to confirm/vacate as an unopposed motion for summary judgment." D.H. Blair & Co., 462 F.3d at 110.  Even where a motion for summary judgment is unopposed, "the district court must still assess whether the moving party has fulfilled its burden of demonstrating that there is no genuine issue of material fact and its entitlement to judgment as a matter of law." Vermont Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004).

RPH has met that burden here.  There is no genuine dispute among the parties that BMPAD agreed to arbitrate the Contracts, participated in the arbitration, and is bound by the determination of the arbitration panel; nor does the record indicate any genuine dispute regarding these facts.  The Final Award itself addresses the material issues at length, and it provides more than the "barely colorable justification for the outcome" required.  <u>D.H. Blair & Co.</u>, 462 F.3 at 110 (quotation marks omitted).  With regards to BMPAD, the Court therefore concludes that RPH "is entitled to judgment as a matter of law."  Rule 56(a), Fed. R. Civ. P.  The Court will accordingly confirm the Final Award against BMPAD.

For its part, ROH concedes that the Final Award is within the scope of the New York Convention, and it does not specifically raise any of the seven defenses.  (ECF 33 at 18.) Instead, ROH challenges the award under section 10(a)(4) of the FAA and argues that the Final Award should be vacated because "the arbitrators exceeded their powers."  (<u>Id.</u> at 19 (citing 9 U.S.C. § 10(a)(4)).)  ROH's arguments expressly invoke "the question of arbitrability."  (<u>Id.</u>) ROH asserts that it "did not agree to submit the issue of arbitrability to the arbitrators because the Republic was not a party or signatory to the arbitration agreements at all," and it proceeds to raise several arguments premised on this assertion.  (<u>Id.</u>)  ROH ultimately suggests the Court "must decide, on <u>de novo</u> review, whether Preble-Rish can establish that its dispute is arbitrable against [ROH], as a non-signatory."  (<u>Id.</u> at 28.)

But as discussed above, the question of whether ROH was a party to the arbitration agreements and whether the parties had submitted the dispute to arbitration—i.e., "the question of arbitrability"—has already been judicially determined.  This was the very issue in the action before Justice Borrok, an action ROH instigated and lost.  The final judgment before Judge Borrok "precludes the parties or their privies from relitigating issues that were or could

have been raised in that action." EDP Med. Comput. Sys., 480 F.3d at 624 (quotation marks omitted).[5]

       The petition to confirm the Final Award will be granted, and the motion to vacate the award will be denied.

       V.      The Motion for Relief from, or Alternatively to Amend, the Partial Final Award Judgment is Moot.

       Also pending before the Court is ROH's motion for relief from the Partial Final Award judgment under Rule 60(b)(4) and 60(b)(1), or to amend the judgment under Rule 59(e). (21-cv-6704 (PKC), ECF 63, 68.) In its briefing on this motion, ROH similarly argued that it was never properly a party to either the arbitration or confirmation proceedings. The Court concludes that this motion is now moot, but the parties will be given the opportunity to be heard on this point.

       The mootness doctrine is mandated by the "case or controversy" requirement in Article III of the United States Constitution, and requires that federal courts not adjudicate matters that no longer present an actual dispute between parties. See Lewis v. Cont'l Bank Corp., 494 U.S. 472, 477–78 (1990). A case is moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Powell v. McCormack, 395 U .S. 486, 496 (1969) (citation omitted). When "it can be said with assurance that there is no reasonable expectation that the alleged violation will recur, [and] interim relief or events have completely and irrevocably eradicated the effects of the alleged violation," the issue is moot. Los Angeles County v. Davis, 440 U.S. 625, 631 (1979) (citations and quotations omitted); see also, e.g., Van Wie v. Pataki, 267 F.3d 109, 113 (2d Cir. 2001). As the Second Circuit noted in

---

[5] ROH's response to this point is that "res judicata does not apply since . . . the Republic cannot be bound by Harris Bricken's litigation conduct." (ECF 33 at 28.) As previously discussed, this Court is not empowered to disturb a state court judgment against ROH in the way it appears to suggest.

Catanzano v. Wing, "[t]he central question . . . is constant—whether decision of a once living dispute continues to be justified by a sufficient prospect that the decision will have an impact on the parties." 277 F.3d 99, 107 (2d Cir. 2001) (citing Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, 13A Federal Practice & Procedure § 3533 (2d ed.1984)).

The Partial Final Award, as confirmed by this Court, was sought by PRH as an "interim" measure aimed to protect a potential final award. (See, e.g., 21-cv-6704 (PKC), ECF 5-1 ("Partial Final Award") ¶ 7; Final Award ¶ 38.) It required respondents to deposit $23,043,429.79 into an escrow account to serve as "pre-award security for PRH's claims in the arbitration." (Partial Final Award ¶ 119.) The Final Award later determined that ROH and BMPAD are joint and severally liable for $28,184,756.65, plus any interest that accrues on whatever portion remains unpaid. (Final Award at p. 75.)

After confirmation of the Final Award, the dispute over interim, "pre-award" security obligations will no longer be "live." The amount that ROH had previously been required to deposit in escrow has now been subsumed into the greater sum it is liable for in the Final Award. Granting ROH the relief it seeks regarding the Partial Final Award judgment would not impact its obligations to PRH.

ROH separately argues that a judgment confirming the Final Award must be "offset" by the amount referenced in the Partial Final Award. (ECF 33 at 35.) As discussed above, ROH is incorrect—the Partial Final Award granted pre-award security to be placed in an escrow account, which would be available for use in satisfying the Final Award. This is not a requirement that ROH pay twice, as it suggests.

The parties will be given 14 days from the date of this Order to show cause why the motion ought not be denied as moot.

25

CONCLUSION

        The Court has considered all the arguments of the parties, whether or not they are expressly referenced here.  The petition to recognize, confirm, and enforce the Final Award of August 23, 2022 as against BMPAD and ROH is GRANTED.  The cross-motion to dismiss the petition, or in the alternative, to vacate the arbitration award is DENIED.

        Within 7 days of this Order, PRH shall submit (1) a declaration from counsel regarding the total amount, inclusive of interest, owed under the terms of the Final Award as of the date of this Order and (2) a proposed final judgment reflecting the foregoing.  Respondents will have 3 days from submission of the proposed final judgment to respond.

        On Docket 21-cv-6704, the parties shall show cause within 14 days of this Order why the motion for relief from judgment, or alternately to amend the judgment, ought not be denied as moot.

        SO ORDERED.

                                                       P. Kevin Castel
                                    United States District Judge

Dated:  New York, New York
        June 29, 2023